WILLIAM BOWE, administrator, *vs.* C. D. HUNKING & others.

Suffolk. . Nov. 17, 1882. — Sept. 7, 1883.   W. ALLEN & HOLMES, JJ.,
absent.

A tenant cannot maintain an action against his landlord for an injury caused by
falling upon a stair in the tenement, the tread of which has been sawed out and
left unsupported by a previous tenant, there having been full opportunity to
examine the stair at the time of hiring, and no warranty of the fitness of the
tenement having been given by the landlord; the only evidence of knowledge
on the part of the landlord being that he knew the stair had been sawed out,
that he tried it and it bore his weight, and he thought it would bear anybody's
weight.

TORT for personal injuries occasioned to the plaintiff's intes-
tate, Eliza M. Bowe, by a defective stairway in a tenement
owned by the defendants, and of which the intestate and her
husband, the plaintiff, were tenants. Trial in the Superior
Court, before *Aldrich*, J., who reported the case for the deter-
mination of this court, in substance as follows:

The action was originally brought by Eliza M. Bowe; and
after her death was prosecuted by her husband as administrator.

It was admitted that the defendants were the owners of the
tenement in question; but the interest of Mrs. Sarah S. Hun-
king, one of them, was that of tenant in dower (unassigned),
and she received one third of the income thereof. The other de-
fendants were tenants in common, subject to this right of dower.

There was evidence tending to show, that, on May 18,
1878, the plaintiff hired, as a tenant at will, through C. D.
Hunking, one of the defendants, at a monthly rent of $15,
this tenement, it being the southerly half of house No. 72 Main
Street, in Haverhill; that C. D. Hunking had general charge
of this estate, including the leasing of the same and the collec-
tion of the rents thereof for himself and his mother, said Sarah
S. Hunking, and his sisters, the other two defendants; that the
plaintiff and his family moved into said tenement on May 20,
1878; that the stairs in question were back stairs leading from
an entry, not well lighted, on the ground floor, to the second
floor; that the stairs were cased in from the second stair from
the bottom to the top; that there was a door shutting across
and upon the tread of this second stair; that the floor of the

entry extended upon a level underneath this second stair, and this space under the stairs was not lighted; that the plaintiff examined the rooms of the house before hiring it, but did not go over these stairs; that he had never been over these stairs; that the family remained in this house as tenants until June 18, 1878, when the plaintiff's wife, in coming down this flight of stairs in the evening, with a lamp in one hand and a pail in the other, stepped upon this second stair, the tread of which then gave way, and her right foot went through this stair, and she was thrown on to the landing at the foot of the stairs, and received the injuries complained of.

There was no evidence that she knew of any defect in this stair before the injury, or that she had ever been over these stairs. She testified that she did not remember to have noticed anything unusual about this stair before her injury; and there was evidence from a witness (not of the plaintiff's family) who had been over the stairs prior to June 18, that this stair "squeaked" as she passed over it; but there was no evidence that any of the plaintiff's family had noticed anything peculiar about the defective stair, or that anything had happened to change the condition of the stairs between the time of the hiring and the time of the accident. The plaintiff testified that he had never noticed these stairs prior to the injury; that, immediately after the injury, he examined the place of the accident, and found that the tread of the second stair had been sawed, about four inches from each end, across to within about an inch of the back side of it, and lengthwise cut out about an inch from and parallel to the back side of the tread; that the piece thus sawed out had fallen in two pieces, one upon the next step below, and one into the hole left in the stair and on to the floor underneath; and that there was also in the hole another piece of wood, which he thought from its appearance had been used to support the portion of the tread sawed out. The piece of the tread which had fallen on to the stair below was produced in court, and the plaintiff testified that it was in the same condition as when picked up by him; that it was not, nor was the other piece of the tread which he picked up, in any way nailed upon the riser of the stairs, nor were any of the pieces nailed to each other, or to any part of the stair, or to the floor. It also appeared that

there was no stringer between these transverse saw cuts to support the stair, and that the stairs were painted.

For the purpose of showing that the defendants knew of this dangerous and defective condition of the stair, the plaintiffs introduced the deposition of the plaintiff's wife, who testified that, after her fall, C. D. Hunking said he noticed there was a defect in the stair; he said he stepped on it right in the centre, and it would bear anybody's weight, he thought. It bore his weight, and he thought it would anybody's.

The plaintiff testified on this subject as follows: "The first time I saw Dr. Hunking to speak to him, after I moved into the house, was a day or two after June 29. He came into the house, and I then asked him to go and look at those stairs, — the step which was sawed in the back entry. I asked him how it came to be sawed out in that way. He said, 'I always supposed that Mr. Morrill (the man who lived in the house before) sawed it out for the purpose of storing away bottles, as he was a liquor inspector or agent.' I said to him, 'You knew they were sawed out, then?' 'Yes,' he said; 'but I stepped on that step and it bore my weight, and I thought it would bear anybody's.' He said he stepped on it in the centre. My son was present. At another time he said he knew there was a defect in the stair; the language he used was similar to that above."

On cross-examination, the following questions were asked: "He told you he had known that the stairs had been sawed, but he supposed they would bear anybody?" And the plaintiff answered, "He acknowledged that to me."

"He said, whenever he said anything about it, that he supposed it would bear anybody?" And the plaintiff answered, "Yes, sir, he did."

William E. Bowe, a son, and Lillie E. Bowe, a daughter of the plaintiff, testified substantially as their father did.

There was no other evidence on the subject of the knowledge of C. D. Hunking of the condition of the stair, and no evidence of knowledge of either of the other defendants, unless the evidence of what C. D. Hunking knew was evidence against them.

Upon this evidence, the defendants contended, and asked the judge to rule, as matter of law, that the plaintiff could not maintain the action; and the judge so ruled, and directed a

verdict for the defendants. If the ruling was right, judgment was to be entered upon the verdict; otherwise, the verdict to be set aside and a new trial granted.

*R. D. Smith & F. W. Kittredge,* for the plaintiff.

*S. B. Ives, Jr.,* for the defendants.

FIELD, J. There is no warranty implied in the letting of an unfurnished house or tenement that it is reasonably fit for use. *Dutton* v. *Gerrish,* 9 Cush. 89. *Foster* v. *Peyser,* 9 Cush. 242. *Doupe* v. *Genin,* 45 N. Y. 119. *Hart* v. *Windsor,* 12 M. & W. 68. *Sutton* v. *Temple,* 12 M. & W. 52. *Wilson* v. *Finch Hatton,* 2 Ex. D. 336. The tenant takes an estate in the premises hired, and persons who occupy by his permission, or as members of his family, cannot be considered as occupying by the invitation of the landlord, so as to create a greater liability on the part of the landlord to them than to the tenant. The tenant is in possession, and he determines who shall occupy or enter the premises. *Robbins* v. *Jones,* 15 C. B. (N. S.) 221. *Jaffe* v. *Harteau,* 56 N. Y. 398.

In the case at bar, there was no express or implied warranty, and no actual fraud or misrepresentation. If the action can be maintained, it must be on the ground that it was the duty of the defendants to inform the tenant of the defect in the staircase; this duty, if it exists, does not arise from the contract between the parties, but from the relation between them, and is imposed by law. If such a duty is imposed by law, it would seem that there is no distinction, as a ground of liability, between an intentional and an unintentional neglect to perform it; but in such a case as this is, there can be no such duty without knowledge of the defect. There is no evidence of any such knowledge, except on the part of C. D. Hunking, and the other defendants cannot in any event be held liable, unless his knowledge can be imputed to them, as the knowledge of their agent in letting the premises. The evidence is insufficient to warrant the jury in finding that C. D. Hunking intentionally concealed the defect from the tenant; and the action, if it can be maintained, must proceed upon the ground of neglect to perform a duty which the law imposed upon the defendants.

A tenant is a purchaser of an estate in the land or building hired; and *Keates* v. *Cadogan,* 10 C. B. 591, states the general

rule, that no action lies by a tenant against a landlord on account of the condition of the premises hired, in the absence of an express warranty or of active deceit.   See also *Robbins* v. *Jones*, 15 C. B. (N. S.) 240.   This is the general rule of *caveat emptor*.   In the absence of any warranty, express or implied, the buyer takes the risk of quality upon himself.   *Hight* v. *Bacon*, 126 Mass. 10.   *Ward* v. *Hobbs*, 3 Q. B. D. 150.   *Howard* v. *Emerson*, 110 Mass. 320.   This rule does not apply to cases of fraud.   It does not apply to the sale or delivery of dangerous or noxious articles.   It is held that " a man who delivers an article, which he knows to be dangerous or noxious, to another person, without notice of its nature or qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other, who is not himself at fault."   *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64.   *Norton* v. *Sewall*, 106 Mass. 143.   The foundation of liability in these cases, when there is no warranty and no misrepresentation, is negligence.   *George* v. *Skivington*, L. R. 5 Ex. 1.

*French* v. *Vining*, 102 Mass. 132, rests upon negligence, or upon an implied warranty that the hay was fit to be fed to cows. This principle of law relating to dangerous or noxious articles has been applied to the letting of tenements.   *Minor* v. *Sharon*, 112 Mass. 477, and *Cesar* v. *Karutz*, 60 N. Y. 229, were both cases in which a tenement or an apartment was let infected with small-pox.   In the first, the jury found that the lessor concealed his knowledge that the tenement was so infected, in order to induce the lessee to hire and occupy it; but the declaration was not for deceit, but for negligence in omitting to inform the plaintiff, and the opinion proceeds upon the ground of negligence.

In *Cesar* v. *Karutz*, it does not appear that there was any intentional concealment, and the decision rests upon the non-performance by the defendant of his duty to inform the plaintiff.   It is not settled how far this exception to the general rule extends.   It has been said that there is no implied warranty that land let for agricultural purposes is free from noxious trees which injure or destroy cattle or sheep.   *Erskine* v. *Adeane*, L. R. 8 Ch. 756.   When a house is infected with small-pox, the

danger to life is from a cause that cannot be discovered by the tenant from any examination he may make. It is obvious that there may be other concealed sources of mischief about a house, which no examination can discover. Spring-guns might be set in it; traps or other contrivances might exist, which would injure the most careful occupant. If the landlord knew of such, it might be held to be his duty to give information to the tenant. Such traps or contrivances are not merely a want of repair; they are, in a sense, active agencies of mischief, which no tenant would expect to find in even a decayed and ruinous tenement.

Without undertaking to determine the limits of this exception to the general rule, we think the case at bar is not within the exception. The defect was that in the back staircase "the tread of the second stair had been sawed, about four inches from each end, across to within about an inch of the back side of it, and lengthwise cut out about an inch from and parallel to the back side of the tread," and was at the time of the accident unsupported. It is argued that this was in effect a trap; but if this be so, there is no sufficient evidence that C. D. Hunking knew it to be a trap. There was no evidence that he caused the step to be sawed out; and the only evidence of knowledge on his part that it had been done was from his own statement to the effect that he knew that the step had been sawed out; that he tried the step, and it bore his weight, and he thought it would bear anybody's. The saw cuts must have been visible to any one who examined the step. The tenant made no examination of it. There is no evidence that C. D. Hunking knew that the step was dangerous, unless this could be inferred from his knowledge that the step had been sawed out. The tenant having neglected to require any warranty from his landlord, and having had full opportunity to examine the tenement, it was his own fault if he did not see what was apparent upon the surface. If the saw cuts visible on the surface were such as to put a reasonable man upon inquiry into the nature of the support to the tread of the step, it was the tenant's fault that he did not examine into that. There was no evidence that C. D. Hunking knew that the step would give way if any one put his foot upon it. If we disregard all that part of his statement which was in

his favor, there only remains evidence that he knew the step had been sawed out, and this an examination by the tenant must have disclosed. Buildings are let in all sorts of condition, and the law is unusually strict in exempting the landlord from liability for injuries arising from defects when there is no warranty and no actual deceit. Tenants often make slight changes in the premises for their own convenience, the effect of which the landlord cannot without examination know. If a succeeding tenant is permitted to examine the premises, the rule of *caveat emptor* applies.                    *Judgment upon the verdict.*