Cole vs. McKey.

COLE, Appellant, vs. McKEY, Respondent.

*September 4 — September 21, 1886.*

LANDLORD AND TENANT. *(1) Liability of landlord for injury from want of repair. (2) Wrongful subletting.*

1. In the absence of any secret defect, deceit, warranty, or agreement on the part of the landlord to repair, he cannot be held liable to the tenant, or any one rightfully occupying under him, for an injury caused by the leased premises getting out of repair during the term, unless it be by reason of his own wrongful act or failure to perform a known duty. And this is so although the premises are let to several tenants and the injury is caused by want of repair in a passage-way used by them in common.

2. Where premises are sublet contrary to the express prohibition of the lease, the landlord owes no duty to the sub-lessee to keep the premises in a safe condition for use by him or by others under him or on his invitation.

APPEAL from the Circuit Court for *Rock* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

July 15, 1884, in pursuance of an oral agreement made about May 1, 1884, the defendant, in behalf of himself and others, constituting the McKey heirs, but in his own name, and in writing, and upon the conditions, conventions, covenants, provisos, and reservations therein contained, leased to the Beloit City Guards, by S., B., and A., the hall known as Armory Hall, in the third story, and three rooms in the second story fronting on State street, in the McKey block, situated on the corner of State and Broad streets, in the city of Beloit, for the term of two years from May 1, 1884, at the rate of $175 per annum, payable monthly in advance, "to be used for the usual purpose of a drill-room and dancing-hall." The said Guards, in and by said lease, in effect covenanted and agreed to " pay rent in the manner aforesaid, and deliver up the said premises, *together with the appurtenances* thereunto belonging," peaceably and quietly, at the expiration of said term, *in as good condition and repair as the same were then,* or might be put into by the lessor,— inevitable accidents, reasonable use, and natural wear and decay excepted; and, further, that they would not do or suffer any waste in said premises; that they would use the same for *the above purpose only;* that *they would not underlet the same, or any part thereof;* that *they would not assign said lease, or any interest therein;* that they would observe special care and caution to preserve the premises from damage or injury by fire or otherwise. There were also a number of other rooms in the building occupied for stores and other purposes; and all were, on or prior to November 22, 1884, in the possession of tenants.

The only means of access into said Armory Hall was through a double door, on the south side of said building, opening immediately into a stairway leading to the second

floor, where there was a hall-way, and from thence by another stairway leading to the third floor, and thence into Armory Hall; and said stairways and halls leading to said Armory Hall were for the common use and convenience of said Guards and other tenants occupying said building, and such other persons as had lawful right to enter said building.

It appears from the evidence that about November 1, 1884, the plaintiff went to Beloit to visit the family of her son-in-law, W. D. Wansor, living at that place. Soon after November 1, 1884, Wansor, without the knowledge or consent of the defendant or any of the owners of the block, rented Armory Hall of the City Guards for the purposes of a skating-rink. He advertised it to be opened as such on the evening of November 14, 1884. It was opened as a skating-rink by Wansor. The plaintiff, with her daughter, Mrs. Wansor, attended such skating-rink twice before November 22, 1884, and on one occasion assisted her son-in-law in running the rink,— she took tickets at the door. Tickets were purchased of her and paid for at the door. One evening she acted as floor manager of the rink for her son-in-law, and once went and paid the rent for him. After that, and on the evening of November 22, 1884, the plaintiff and her daughter, Mrs. Wansor, started to go to the entertainment at the skating-rink, as she had before. It was dark, rainy, and the wind blew hard. There was no light at the foot of the stairs, and the hallway was dark. As she went in, the right-hand part of the door of the entrance was shut, and the left-hand part of the door open; and as she went through the part of the door that was open, and stepped to the right,— just at the right of the part of the door that was shut — a little from the edge of the door,— she stepped into a hole in the floor, and went down into it with one limb up as far as she could fall,— nearly to the groin,— and wrenched and badly injured herself. The hole was formed

by the floor breaking through, and had been there for more than three weeks, and during that time was known to be there by members of the Guards. It was about six inches wide, and eight or ten inches long. At the time of the agreement to lease, the place where the hole was had become rather worn, but was otherwise in good condition. Armory Hall had been used as a rink in the winter of 1881–82 and 1882–83. In August or September, 1884, the Presbyterian Society gave a kind of fair or entertainment in the hall. Prior to May 1, 1884, the Guards had talked with the defendant about improving and repairing the hall, which he refused to do, because they would not pay more rent than named in the lease. The undisputed evidence shows that neither the defendant, nor any of the owners of the block, lived in Beloit, or had any knowledge or information as to the existence of the hole in question until after the plaintiff's injury, November 22, 1884. The rents were collected through the bank.

At the close of the testimony, of which the above statement is the substance, the defendant moved for a nonsuit, which was granted; and from the judgment entered thereon the plaintiff appeals.

For the appellant there was a brief by *Buckley & Wickhem*, and oral argument by *Mr. Buckley*. They contended, *inter alia*, that when a building is rented by two or more tenants, it is the duty of the lessor, in the absence of any express condition to the contrary, to keep the common halls, stairs and passage-ways in repair; and he is liable to a third party who may be injured by reason of the defective condition of such common halls, stairs, and passage-ways, of which defective condition he knew or ought to have known. *Readman v. Conway*, 126 Mass. 374; *Looney v. McLean*, 129 id. 33; *Shipley v. Fifty Associates*, 101 id. 251; *S. C.* 106 id. 194; *Milford v. Holbrook*, 9 Allen, 17; *Elliott v. Pray*, 10 id. 378; *Sweeny v. O. C. & M. R. Co.* id. 368;

*Corby v. Hill*, 93 Eng. C. L. 556; *Ivay v. Hedges*, L. R. 9 Q. B. Div. 80; *M'Martin v. Hannay*, 10 Sess. Cas. (3d Series), 411; *Holmes v. N. E. R. Co.* L. R. 6 Exch. 123; *Camp v. Wood*, 76 N. Y. 92; *Baker v. Byrne*, 58 Barb. 438; *Swords v. Edgar*, 59 N. Y. 34; *Eakin v. Brown*, 1 E. D. Smith, 36; *Eagle v. Swayze*, 2 Daly, 140; *Samuelson v. Cleveland I. M. Co.* 49 Mich. 164; *Currier v. Boston M. Hall*, 135 Mass. 414; *Lane v. Atlantic Works*, 111 id. 136; *Totten v. Phipps*, 52 N. Y. 354. That the plaintiff is entitled to recover, though a trespasser, see *Sutton v. Wauwatosa*, 29 Wis. 21; *Marble v. Ross*, 124 Mass. 44; *Hooker v. Miller*, 37 Iowa, 613; *Railroad Co. v. Stout*, 17 Wall. 657; *Hydraulic Works v. Orr*, 83 Pa. St. 332; *Radley v. L. & N. W. R. Co.* L. R. 1 App. Cas. 754; *Fletcher v. Rylands*, L. R. 1 Exch. 265; *S. C.* L. R. 3 H. L. Cas. 330, 339; *Smith v. Fletcher*, L. R. 7 Exch. 305; *S. C.* 9 id. 64; *Smith v. Kenrick*, 62 Eng. C. L. 515; *White v. France*, 21 Eng. (Moak), 305; *Watson v. N. R. Co.* 24 Up. Can. Q. B. 98; *Lynch v. Nurdin*, 41 Eng. C. L. 422; *Sherfey v. Bartley*, 4 Sneed, 58; *Elliott v. Pray*, 10 Allen, 378; *Zoebisch v. Tarbell*, id. 385; *Haughey v. Hart*, 62 Iowa, 96; *S. C.* 49 Am. Rep. 138; *Bird v. Holbrook*, 4 Bing. 628; *Murray v. McShane*, 52 Md. 217; 1 Thompson on Neg. 12.

For the respondent there was a brief by *Winans & Hyzer*, and oral argument by *Mr. Winans*. They argued, among other things, that the plaintiff's entry was wrongful, and consequently the defendant owed her no duty and is not liable although the hallway was out of repair. *Sweeny v. O. C. & N. R. Co.* 10 Allen, 372; *Carleton v. F. I. & S. Co.* 99 Mass. 216; *Severy v. Nickerson*, 120 id. 306; *P., Ft. W. & C. R. Co. v. Bingham*, 29 Ohio St. 364; *Hargreaves v. Deacon*, 25 Mich. 1; *Jaffe v. Harteau*, 56 N. Y. 398; *McAlpin v. Powell*, 70 id. 126; *Cunningham v. B. S. S. & L. Co.* 93 id. 483; *Hounsell v. Smyth*, 97 Eng. C. L. 731; *Chapman v. Rothwell*, 96 id. 168; *Roulston v. Clark*, 3 E. D. Smith,

366. The only exception to the doctrine of the above cases is where the injury was wanton or wilful. *Marble v. Ross*, 124 Mass. 49; 41 N. Y. 539. See *Thayer v. Jarvis*, 44 Wis. 388; *C. & N. W. R. Co. v. Goss*, 17 id. 428; *Stucke v. M. & M. R. Co.* 9 id. 202; *Griswold v. C. & N. W. R. Co.* 64 id. 652; *Davis v. C. & N. W. R. Co.* 58 id. 646. If one, by invitation of another without authority, enters upon the premises of a third person, such entry is a trespass. *Hazelton v. Week*, 49 Wis. 661; *Lygo v. Newbold*, 24 Eng. L. & Eq. 507; *Steward v. Winters*, 4 Sandf. Ch. 587. If plaintiff was not a trespasser, her cause of action, if any, was against the Guards, who let the hall to her or to her son-in-law, and not against the defendant. *Burdick v. Cheadle*, 26 Ohio St. 393; 126 Mass. 545; 87 N. Y. 471; 98 id. 245; 52 id. 354; 22 U. C. C. P. 580. The subletting was in violation of the lease, and the use of the hall, either by the Guards or the appellant, as a rink was wrongful. Taylor on Landl. & T. sec. 212–214a; Washburn on Easements (3d ed.), 254, 256; 21 Pick. 72; 4 McCord, 96; 38 Vt. 95; *Comstock v. Van Duesen*, 5 Pick. 163; *Allan v. Gomme*, 11 Ad. & El. 759; *Wynkoop v. Burger*, 12 Johns. 222.

CASSODAY, J. The case at bar is clearly distinguishable from that class of cases cited where the injury is to a traveler upon a public highway or walk, and the defect complained of is either in, or in close proximity to, such highway or walk; as in *Inhabitants of Milford v. Holbrook*, 9 Allen, 17; *Readman v. Conway*, 126 Mass. 374; *Brown v. Weaver*, 5 Atl. Rep. 32. The rule seems to be well settled that, in the absence of any secret defect or deceit or warranty or agreement on the part of the landlord to repair, the tenant takes the leased premises in the condition they happen to be in at the time of the leasing, and that in such case the landlord is not liable to the tenant for an in-

jury caused by the premises being out of repair during the term. *Hart v. Windsor,* 12 Mees. & W. 68; *Keates v. Earl of Cadogan,* 70 Eng. C. L. 591; *Doupe v. Genin,* 45 N. Y. 119; *McAlpin v. Powell,* 70 N. Y. 126; *Edwards v. N. Y. & H. R. Co.* 98 N. Y. 245; *Dutton v. Gerrish,* 9 Cush. 89; *Woods v. Naumkeag S. C. Co.* 134 Mass. 357; *S. C.* 45 Am. Rep. 344; *Bowe v. Hunking,* 135 Mass. 380; *S. C.* 46 Am. Rep. 471; *Brewster v. De Fremery,* 33 Cal. 341; *Krueger v. Ferrant,* 29 Minn. 385; *Humphrey v. Wait,* 22 U. C. C. P. 580; Wood on Landl. & T. sec. 382. So it seems that the rightful subtenant, servant, employee, or even customer of the lessee is under the same restriction, because he enters under the same title, and not by any invitation, express or implied, from the owner, and hence assumes the same risk. Taylor on Landl. & T. sec. 175; *Jaffe v. Harteau,* 56 N. Y. 398; *Ryan v. Wilson,* 87 N. Y. 471.

In the case before us there is no claim of any secret defect, deceit, warranty, or agreement on the part of the defendant to repair. On the contrary, it was expressly agreed upon the part of the tenant to "deliver up the said premises, together with the *appurtenances* thereunto belonging, . . . peaceably and quietly, at the expiration of said term [of two years' time], in as good condition and repair as the same" were at the time of making the lease. Undoubtedly, the lease gave to the lessees, and those rightfully using any part of the leased premises under them, the right of passage through and up the hallways and stairways mentioned, as there was no other means of access. *Pomfret v. Ricroft,* 1 Saund. 321; *Doyle v. Lord,* 64 N. Y. 432; *Royce v. Guggenheim,* 106 Mass. 201.

But it is claimed that notwithstanding such right of passage, yet that, as the defendant had other tenants in the same building, having a like right of passage, such hallways and stairways must be deemed to have remained in the

possession and control of the defendant, and hence that he was responsible for injury by reason of any want of repair therein.

It has been held that where the landlord only rented a portion of the premises, and retained the possession, occupancy, and control of the balance, he was liable to one injured, while rightfully passing over the portion in his possession, by reason of a defect therein. *Camp v. Wood,* 76 N. Y. 92; *Edwards v. N. Y. & H. R. Co.* 98 N. Y. 255. This rule has been extended to a passage-way over staircases and entries used by the lessee "in common with the landlord and the other tenants" in the same building. *Looney v. McLean,* 129 Mass. 35.

In commenting upon that case, the same court said: "It may be that there is an obligation on the owner to keep the ways [staircases and passage-ways] in such a condition that they can be safely used by the tenants; but this obligation has never been extended so as to require a construction of the ways on a different plan, if the ways, as they existed when the premises were hired, were not altogether convenient or safe by reason of some fault in the original plan which was apparent;" and so it was accordingly held that a landlord letting several tenements in the same building, with a common exterior flight of entrance steps, without a railing, was not liable to a tenant injured by falling on ice accumulated on the steps, although they were so made, and of such material, as to collect ice. *Woods v. Naumkeag S. C. Co. supra.*

In the still later case of *Bowe v. Hunking, supra,* the same court held that a landlord was "not liable to his tenant for a personal injury by reason of a defect in a stairway in the tenement caused by a previous tenant; there having been an opportunity to examine the premises at the time of hiring, and no warranty of fitness, and *no knowledge* on the landlord's part of any unsafeness." The defect in the stair-

case there complained of was that "the tread of the second stair had been sawed, about four inches from each end, across to within about an inch of the back side of it, and lengthwise cut out about an inch from and parallel to the back side of the tread, and was, at the time of the accident, unsupported."

*Looney v. McLean, supra,* is quite similar in its facts to the Scotch case cited, of *M'Martin v. Hannay,* 10 Sess. Cas. (3d Ser.), 411, in which Lord BENHOLME made this distinction: "The landlord undertook to be answerable for the outside stair. He actually kept a man in his employment for the purpose of looking after it and other similar stairs in various tenements. This relieves my mind of considerable doubt; for often the landlord is not near the place where the property is situated, and knows nothing about the dangerous condition into which it may have got. In such cases 'here may be a considerable room for arguing that the tenant may have incurred a certain responsibility."

In the recent case of *Ivay v. Hedges,* L. R. 9 Q. B. Div. 80, the defendant let out his house, in apartments, to several tenants, with the privilege of using the roof, which was flat, having an iron rail at the outer edge, for drying their linen. The plaintiff, one of the tenants, went upon the roof to remove some linen, when his foot slipped; and, the rail being out of repair to the knowledge of the landlord, he fell, and was injured. The nonsuit of the plaintiff was sustained on the ground "that there was no duty on the landlord to protect such a place; and that, if the lodgers chose to use the roof for the purpose stated, they must take it *cum onere.*"

In *Humphrey v. Wait,* 22 U. C. C. P. 580, the defendant leased to the plaintiff a room in his house. The only mode of access to it and the other rooms on the same story, was by a certain passage, in which there was an uncovered stove-pipe hole, into which the plaintiff, while rightfully

passing, slipped and was injured; and it was held that, in the absence of an express contract, the defendant was under no legal obligation to keep the premises in repair, and hence he was not liable. It is there said by the chief justice on the part of the court: " If a man rent the upper story of a house, with the staircase — the only means of approach — in a ruinous and unsafe state, I see no implied obligation on the landlord to uphold it, or to answer in damages for an injury resulting from its insecure state. It would be a singular state of the law if the landlord would not be answerable if he demised the stairway with the upper story, and would be answerable if he only gave a right to use it as an approach to the part of the house actually demised."

This language has received the express sanction of the supreme court of Indiana. *Purcell v. English*, 86 Ind. 34. In that case it was held that " where a stairway, connected with apartments hired in a tenement house occupied by several tenants, is rendered unsafe by temporary causes, such as the accumulation of snow and ice, the landlord is not liable to the tenant who uses such a stairway with full knowledge of its dangerous condition, unless there is a contract on the part of the landlord to keep the premises in repair and fit for safe use." In that case there is a discriminating and well-written opinion by ELLIOTT, J., throwing doubts upon the soundness of *Looney v. McLean, supra*, and claiming that it stands alone. It is there said that " the duty of the tenant to keep in safe condition, for his own use, the demised premises, extends to all the appurtenances connected therewith, and this includes steps, stairways, and other approaches. Whatever passes to the tenant under the lease is, for the term designated, under his control and in his possession;" citing *Pomfret v. Ricroft, supra*. See, also, *Howard v. Doolittle*, 3 Duer, 464; *Corey v. Mann*, 14 How. Pr. 163; *Kaiser v. Hirth*, 46 How. Pr. 161; *Loupe v. Wood*,

51 Cal. 586; *Krueger v. Ferrant, supra; Platt v. Farney*, 16 Bradw. 216.

It is unnecessary here to determine the apparent conflict between the Massachusetts case mentioned and other cases cited; since it is pretty clear from the authorities that, in the absence of any secret defect, deceit, warranty, or agreement on the part of the landlord to repair, he cannot be held liable to the tenant, or any one rightfully occupying under him, for an injury caused by the premises getting out of repair during the term, unless it be by reason of his own wrongful act or failure to perform a known duty. Thus, in *Carstairs v. Taylor*, L. R. 6 Exch. 222, where the landlord rented the lower part of the house, and retained possession of the upper part, it was said on the part of the court: "The defendant can only be liable if he was guilty of negligence."

The defendant here testified that he did not know of the defect in the entry-way until after the injury; and the circumstances preclude any presumption of such knowledge. It would be unwarranted to find, upon such facts, that he was guilty of negligence. But the case is very much stronger for the defendant than any of the cases cited. Wansor was not occupying the hall as a skating-rink by any rightful authority from the defendant or any of the owners of the building. On the contrary, the letting to Wansor by the Guards was expressly prohibited by the written lease. The occupancy by Wansor, and those under him or upon his invitation, for such a purpose, was wrongful, as against the defendant and the other owners. The plaintiff, at the time of the injury, was so occupying. This being so, neither the defendant, nor any of such owners, under any of the authorities, owed her the duty of security in passage while she was in the act of invading their rights. To constitute actionable negligence, the defendant must be guilty of some wrongful act or breach of positive *duty to the*

*plaintiff.* This is elementary, and has often been recognized by this court. *Cahill v. Layton,* 57 Wis. 600; *Griswold v. C. & N. W. R. Co.* 64 Wis. 652; *Purcell v. English, supra; Ryan v. Wilson, supra.* There is no claim of any such wrongful act. It is very clear that the defendant owed to the plaintiff no such duty.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 29 N. W. Rep. 279.— REP.

<hr>

