## MARY E. SMITH *vs.* STATE OF MARYLAND USE OF MICHAEL J. WALSH.

*Landlord not Liable to a Subtenant for an Injury Caused by Defective Condition of the Leased Property.*

A landlord who leases private premises which are then or subsequently become dangerous from want of repair is not liable to the lessee or to a subtenant for an injury caused by such defective condition of the property, in the absence of fraud or concealment.

But where the property rented is a wharf or hall, or premises where the public generally are to be invited, then, if they are unsafe when leased, the landlord is liable for injuries thereby occasioned to third parties.

Defendant leased a house to one A, who rented out rooms therein to persons who used the halls and porches in common. Plaintiff was a subtenant of A and his daughter, a child five years old, fell through an opening in the balustrade of a porch on the second floor, which was caused by some of the balusters having fallen out. In an action to recover damages for the death of the child resulting from the fall, there was no evidence that the defect in the balustrade existed when the property was originally rented or that the defendant knew of its existence. The lease imposed no obligation upon the landlord to make repairs. *Held*, that the defendant is not liable to the plaintiff for the injury so occasioned.

Appeal from a judgment of the Superior Court of Baltimore City (HARLAN, C. J.) That Court granted the plaintiff's first prayer which instructed the jury that " if they find from

all the evidence in this case that the house No. 314 West Lombard street, in the city of Baltimore, was, on the 20th day of August, 1899, the property of the defendant, Mrs. Mary E. Smith, and that as such owner she leased or let the house to one Neptune E. Bowden ; and if they shall further find that at the date of the aforesaid lease or letting to Bowden there was on the premises a porch as described by the witnesses, and that this porch was there for the purpose of affording access to and from the various rooms of the house, and that it was one of the ways furnished for those using the upper floor rooms to reach the rear stairway, and the way to the hydrant, sink, etc. And if they further find that Bowden, as tenant under such lease or letting, entered into and was using the said premises as a "furnished-room house" when the accident as described by the witness occurred. And if they shall further find that on the day the said premises were leased or let by the defendant, Mary E. Smith, to Bowden, the said porch had become in a dangerous condition by reason of the timbers, stringers, or other parts thereof having become rotten, and that they remained in such rotten and unsafe condition down to the time of the accident complained of. And if the jury shall further find that at the time the said lease or letting was made the defendant knew, or by the exercise of reasonable diligence could have known of the rotten and unsafe condition of the said porch, and failed to repair the same. And if they shall further find that during the possession of the said Bowden, under the terms of the said lease or letting, the equitable plaintiff, Michael J. Walsh, rented of the said Bowden one of the rooms of the said house and was occupying the same ; and that while Sadie Walsh, the minor child of the equitable plaintiff, was coming along the said porch going from the rear toward the room in which her father was, a portion of the said porch gave way by reason of the rotten and defective condition thereof, whereby the said Sadie Walsh was precipitated into the yard below as a result of which fall she died within a few hours ; and that said fall causing the death of the said Sadie Walsh could not have been avoided by

the use of such care and caution by the child as ought under all circumstances of the case to have been reasonably expected from one of her years and experience and was in no wise contributed to by any want of reasonable care and forethought on the part of the equitable plaintiff, and if they shall further find that the deceased was the minor child of the equitable plaintiff then the plaintiff is entitled to recover."

The jury returned a verdict for the plaintiff for $400.

The cause was argued before McSherry, C. J., Fowler, Briscoe, Boyd, Pearce, Schmucker and Jones, JJ.

*Louis P. Hennighausen* and *Charles F. Stein*, for the appellant.

It is sought to hold the appellant responsible in damages for the injury complained of for the reason that she is the owner of a permanent term of leasehold of the premises, and in August, 1897, rented the same to Bowden at a monthly rent of $25, who continued uninterruptedly as tenant up to the time of the trial. Bowden at the time of renting the premises stated he wanted them for a storage-house to store furniture. He paid a very low rent, as it appears that the ground rent, taxes, &c., paid by appellant far exceeded the rent she received. The tenant was satisfied with the condition of the premises. Instead of a storage-house the tenant, for his own profit and advantage, uses the premises for renting furnished-rooms. He kept four such houses. He does not occupy it himself but places it in charge of a housekeeper. The appellant being blind could not personally know of the condition of the porch, and there is no evidence whatever that knowledge was brought home to her, nor that she had knowledge that her tenant was using the premises instead of a storage-house for renting furnished-rooms to subtenants. The rent was paid by the tenant, Bowden, at his residence a couple of blocks away from the house. The plaintiff, by his order of May 31st, 1900, dismissed the case as against the tenant, co-defendant Bowden, for some reasons unknown to the appellant, and proceeded against the appellant alone.

1. The plaintiff failed to show how the accident happened, it is a mere conjecture that the child would not have fallen as it did but for the missing balusters, children of her age fall out windows, down stairways, climb over balustrades and fall; who can tell that the child was not trying gymnastics on or over the top railing and lost her balance. Juries are not allowed to conjecture. *Abbott's case,* 75 Md. 158; *Savingtons' case,* 71 Md. 599; *Millslager's case,* 73 Md. 75; *Benedick's case,* 88 Md. 52; *Burns' case,* 54 Md. 114.

2. It is undisputed that the porch was wide enough, four feet, and the flooring sound for a safe passage ; it was not intended for nursery or play ground, and there is no law requiring pickets in the railing of every porch or stairway to prevent children from crawling through ; the open space being at least three feet wide was as visible as the steps which were leading into the yard. It remained in the same condition and in daily use up to the time of the trial without a further accident to any one else. Thousands of high front steps often of stone or marble, leading up to the doors of houses in our cities are without balustrades or guards, and offer the same danger. *County Comm.* v. *Ryckman,* 91 Md. 36.

3. Children of tender age are entitled by law to some care and attention by their parents according to circumstances, and in this case, it is admitted, the parent allowed his small child, in a strange house unattended, to wander over a porch to the last room of the back building to obtain a drink of water, he remaining in his room in the front building sitting on a chair. Ordinary care of the child by her father would have prevented the accident. The second prayer of the appellant ought to have been granted.

4. Assuming for argument that the child fell through the open space ; that it had the right to leave the safe wide porch and, at the peril of the landlord in damages, to lean over the side of the porch, and that the parent was not bound to look after his child to guard it against danger in a strange building; that the landlord is liable by neglecting to repair said open space, the question arises which landlord. The plaintiff rented

the room from Bowden, Bowden was the tenant of the entire premises from the appellant ever since August, 1897, he had since then absolute possession and full knowledge of the condition of the demised premises. The condition of a house regulates its rental value ; he was satisfied to take it with the porch in a condition, which all witnesses for the plaintiff testified, it was for the last five or six years, and he never complained about it. Bowden was the direct immediate landlord of the equitable plaintiff ; he had the direct profit and advantage of the renting of the furnished-room to the plaintiff, and if any landlord is liable, it is Bowden, and not the superior landlord, the appellant, nor the landlord of the fee-simple estate in the premises. If the tenant, by his arbitrary use of the demised premises, can fix a liability for damages for accidents caused by the condition of the premises on the landlord, where is the limit ?

5. The appellant submits that she is not liable, because the lessee took the premises as he found them, for better or worse, and should have protected himself for any loss or damage arising out of their ruinous condition by a warranty or covenant ; this Bowden did not do. *Mumford* v. *Brown*, 6 Cowen, 475, and cases below.

This rule, commonly called the doctrine of *caveat emptor*, is laid down in by *Taylor on Landlord and Tenant*, sec. 175A. See also *Underhill on Torts*, sec. 221; *Busswell Personal Injuries*, sec. 82; *Sherman & Redf. on Negligence*, sec. 709, page 1229; *Thomson on Negligence*, sec. 323; *Ray on Negligence of Imp. Duties*, sec. 61; 2 *Wood, L. & T.*, sec. 1292–1294, sec. 286, vol. 1; 6 *Amer. Law Review*, 615–616–635–637–645–647; 6 *Lawson R. R. & P.*, 4619, sec. 2829. *Burchard* v. *Dickinson*, 50 L. J. Q. B. 100; *Gunther* v. *Atwell*, 19 Md. 157.

Neither a tenant nor a subtenant is entitled to recover against a landlord for an injury caused by the defective condition of the premises when there has been no fraud or misrepresentation. *Doyle* v. *Railroad Company*, 147 U. S. 413; *Schwalbach* v. *Shinkle*, 97 Fed. Rep. 483; *Monyihan* v. *Allyn*, 162 Mass. 272; *Booth* v. *Merriam*, 155 Mass. 521; *Martin* v.

*Richards*, 155 Mass. 381; *Cutter* v. *Hamlin*, 147 Mass. 471 and 478; *Cowan* v. *Sunderland*, 145 Mass. 363; *Bowers* v. *Hunking*, 135 Mass. 380; *McKenzie* v. *Chatham*, 83 Me. 548; *Hill* v. *Woodman*, 14 Me. 38, 43; *Scott* v. *Simon*, 54 N. H. 430; *Railton* v. *Taylor*, 20 R. I. 279; *Jaffe* v. *Hartean*, 56 N. Y. 398, 401; *Edgar* v. *R. R.*, 98 N. Y. 245, 247; *Franklin* v. *Brown*, 118 N. Y. 110, 113; *Murray* v. *Albertson*, 50 N. J. L. 167, 168; *Mullen* v. *Raine*, 45 N. J. L. 523; *Naumberg* v. *Young*, 44 N. J. L. 332, 344; *Harlan* v. *The Coal Comp.*, 35 Pa. St. 287; *Hazlett* v. *Powell*, 30 Pa. St. 293; *Oilworks* v. *Brickford*, 14 Lea. 657; *Banks* v. *White*, 1 Snead. 614; *Marshall* v. *Heard*, 59 Texas, 266; *Cole* v. *McKey*, 66 Wisc. 500, 505; *Anderson* v. *Hays*, 101 Wisc., 543; *Ward* v. *Fagin*, 101 Mo. 674, 675; *Petersen* v. *Smart*, 70 Mo. 34, 37; *Floen* v. *Stapf*, 9 Mo. Appeals, 309; *Burdick* v. *Cheadle*, 26 Ohio, 393, 397; *Kahn* v. *Leve*, 3 Or. 207; *Lucas* v. *Coulter*, 104 Ind. 81; *Purcell* v. *English*, 86 Ind. 34, 40; *Blake* v. *Ranvins*, 25 Ill. App. 488; *Mantell* v. *Fink*, 8 Ill. App. 381; *Harpel* v. *Fall*, 63 Minn. 520, 523; *Krueger* v. *Farrand*, 29 Minn. 387, 388; *Gately* v. *Campbell*, 124 Cal. 520; *Brewster* v. *DeFremery*, 33 Cal. 345, 346; *Davidson* v. *Fisher*, 11 Col. 583, 587; *Fisher* v. *Lighthall*, 4 Mackey, 82, 89; *Robins* v. *Jones*, 15 C. B. N. S. 221, 240; *Francis* v. *Cockrill*, Law R. 5 Q. B. 506; *Keates* v. *Cadagan*, 10 C. B. 591; *Ward* v. *Hobbs*, 3 Q. B. Div. 150; *Humphrey* v. *Ward*, 22 Upper Canada, C. P. 580.

*Horton S. Smith* and *Wm. Mellin Ballou* for the appellee:

1. Where the owner of premises lets or leases them and at the time of such renting they are in an unsafe or defective condition for the use for which they are intended, and the owner knew, or by the exercise of reasonable diligence could have known of their condition, and one who is lawfully upon the premises is injured, by reason of said defective condition, the owner is liable for injury. *Albert* v. *State*, 66 Md. 325; *State* v. *Boyce*, 73 Md. 471; *Owings* v. *Jones*, 9 Md. 108; *Swords* v. *Edgar*, 59 N. Y. 25; *Aherns* v. *Steele*, 115 N. Y. 210; *Edwards* v. *R. R. Co.*, 98 N. Y. 245; *Carson* v. *Godley*, 26 Pa. St. 111;

*Godley* v. *Hagerty*, 20 Pa. St. 387; *Rex* v. *Pedley*, 1 Ad. & El. 826.

2. There is no distinction between the law applicable to the demise of a dwelling-house and of buildings to be used for public purposes in these respects. *Edwards* v.*R. R.*, 98 N. Y at 249.

3. So would the owner of property be liable where the premises were a *nuisance* at the time of the letting, or were likely to become a nuisance in the ordinary and reasonable use of the same for the purposes for which they were *constructed*, and failed to repair the same. *Fow* v. *Roberts*, 108 Pa. 491; *Todd* v. *Flight*, 99 E. C. L. 390; *Owings* v. *Jones*, 9 Md. 108; *Edwards* v.*R. R. Co.*, 98 N. Y. 245, and cases above.

4. Suffering premises to be constructed or to become in a dangerous or defective condition is a nuisance. *Reichenbacher* v. *Palmeyer*, 8 Bradw. 217; *Godley* v. *Hagerty*, 20 Pa. 387; *Mullen* v.*St. John*, 57 N. Y. 567; *Edwards* v. *R. R. Co.*, 98 N. Y. 245; *Albert* v.*State*, 66 Md. 325.

5. A premises defective and insecure when leased, is for the purposes of this action *per se nuisance* when an injury has resulted from its subsequent use as if sound. Its effect upon third parties is not the result of its use by the lessee. It is the original and insecure condition which is the cause of the injury. *Mullen* v. *St. John*, 57 N. Y. 567; *Swords* v. *Edgar*, 59 N. Y. at 35.

6. For an owner to protect himself from liability arising out of the use of property demised in the way that it was obviously intended to be used by the tenant, he must, by express covenant, exempt the premises from the use to which it was unsuited. *Carson* v. *Godley*, 26 Pa. St. 111; *Godley* v. *Hagerty*, 20 Pa. St. 389; *Albert* v. *State*, 66 Md. 325. The facts in this case are clear that there was "no specific agreement" or "no special purpose whatever" for which the premises were let, and therefore the defendant is bound by any reasonable use by Bowden. *Carson* v. *Godley*, 26 Pa. St. 111, and cases cited above.

7. Third parties or strangers are not bound by any contract

or covenant that may exist between the landlord and tenant relative to the repairs or condition of the property. *Edwards v. R. R.*, 98 N. Y. at 248; *Roswell v. Prior*, 2 Salk, 260; *Rex v. Pedley*, 1 Ad. & El. 826; *Piccard v. Collins*, 23 Barb. 444; *Aherns v. Steele*, 115 N. Y. 210; *Moody v. Mayer, &c.*, 43 Barb. 283; *Reichenbacher v. Palmeyer*, 8 Bradw, 219. For third parties have no way of ascertaining the agreement. *Bears v. Ambler*, 8 Pa. St. 194. There is no privity between the equitable plaintiff and the defendant Mary E. Smith. *Wood L. & T.*, page 179, and case in note 3.

8. As there was a mutual interest or a pecuniary advantage accruing to both parties there is an express invitation. "The rule or principle applicable to this class of cases is that the owner is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement or inducement, either express or implied, by which they have been led to enter thereon." The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, whilst a license is inferred where the object is the mere pleasure or benefit of the person using it. *Sweeney v. Old Colony R. R.*, 10 Allen, 373; *Benson v. R. R. Co.*, 77 Md. 541; *B. & O. R. R. v. Rose*, 65 Md. 488. Moreover, the defendant's knowledge that visitors and sojourners would come upon the premises, and that they were unsuitable for that purpose, would make her liable at all events. *Whitaker's Smith's Neg.*, 83 and 84; *Rex v. Pedley*, 1 Ad. & El., 827; *2 Salkeld*, 459; *Swords v. Edgar*, 59 N. Y. 37; *Owings v. Jones*, 9 Md. 108; *Albert v. State*, 66 Md. 327.

9. By preponderance of evidence the plaintiff has established the rule of *res ipsa loquitur.* He has proved, not only the injury, but also how the injury happened, and what occasioned it. *Bennedict v. Potts*, 88 Md. 56–57; *Howser's case*, 80 Md. 146; *Byrne v. Boadle*, 2 Hurl. & Col. 728; *Traction Co. v. Thalheimer*, 2 Am. Neg. Rep. 196; *Mullen v. St. John*, 57 N. Y. 567; *Treusch v. Kamke*, 63 Md. 284. Wood does not decay in a day, but requires a long period of time. *Albert*

v. *State*, 66 Md. 325; *Metcalf* v. *House*, 27 Conn. 631. At the instant of or immediately before the fall the child was seen at a position on the porch where the railing had fallen out, was heard to fall, was picked up immediately thereunder, and was unconscious at the time. One of the broken pickets of the said railing was found by the side of the child.

10. So far as a child is personally concerned, it is only held to the exercise of such degree of care as could reasonably be expected of children of its years and intelligence. *McMahon's case*, 39 Md. 438; *Freyer's case*, 30 Md. 47; *McDonnell's case*, 43 Md. 534.

11. The fact that a child *not sui juris* is found in a dangerous place, does not establish a case of negligence against its proper custodian. Very young children are allowed many liberties; a child of five may be allowed on a city sidewalk or to run errands. *Cooley, Torts*, 2nd ed., page 821. *A fortiori* to go about the house. A child may run on errands without any one feeling shocked by any risk to which it may be exposed, though these may be greater in the case of adults. Suffering such liberties is not the highest care, but it is not inconsistent with ordinary care, therefore, *not negligence* (Same citation.)

12. This porch open and of easy access to the room in which the child was, naturally appealed to the childish instincts and propensities of one of its years and intelligence, and was, therefore, equivalent to an invitation, and under the circumstances the child "must not be viewed as a trespasser," but expected to act upon childish instinct and propensities. *Cooley, Torts*, 2nd. ed. 356; *Buswell, Per. Inj.*, sec. 148; *Railroad* v. *Stout*, 17 Wall. 657; *Mergenthaler* v. *Kirby*, 79 Md. 182; *Hydraulic Works* v. *Orr*, 83 Pa. St. 332; *Keefe* v.*Railroad Co.*, 21 Minn. 209; *Powers* v. *Harlow*, 53 Mich. 507; *Railroad* v. *McDonald*, 152 U. S. 262. Dangerous premises are attractive to children. *Pekin* v. *McMahon*, 154 Ill. 141; *Branson* v. *Labrot*, 81 Ky. 638. As a matter of law a child of six years of age cannot be said to be guilty of contributory negligence. *Mackey* v. *Vicksburg*, 64 Miss. 782.

BOYD, J., delivered the opinion of the Court:

This action was brought for the use of Michael J. Walsh, the father of Sarah Walsh, for loss of the services of his child, who was killed by reason of the alleged negligence of the appellant and Neptune E. Bowden, in wilfully and knowingly allowing a balcony on a house owned by the appellant, and rented to Bowden, to be in a dangerous condition. Mrs. Smith had owned the house since July, 1893, and some time in 1897 her agent rented it to Mr. Bowden, who continued to hold it, as monthly tenant, until after the accident, which happened on the 20th of August, 1899. She made no agreement to repair it or keep it in repairs. Having a housekeeper in charge, the tenant rented one or more rooms to those applying for them. Walsh rented from the housekeeper, on the 19th of August, 1899, a front room on the second floor, and the next day took his child, Sadie, who was five years and six months old, to the room. There was a back building along which a porch ran from the second story of the front building. Three rooms opened on the porch and there was a stairway leading from the middle of it (between two of the rooms) down to the yard. Mrs. Sheckels, who was an acquaintance of Walsh, occupied the rear room, and in the afternoon of the 20th of August the little girl, with the permission of her father, went to Mrs. Sheckels' room to get some water, which she got and started along the porch towards her father's room. Mr. Scott, who occupied the middle room on the porch, saw her go to Mrs. Sheckels', and just after she passed his window a second time he heard something fall. He then went on to the porch and saw the child lying below on the bricks. The balustrade had several openings in it— the balusters being out—the theory of the plaintiff being that the child fell through the one near Mr. Scott's door. He said that opening was about three feet wide and the child was lying below it and a " picket," as he called it, was lying by the child when he found her. She was killed by the fall. The testimony shows that the balustrade was in a bad condition and had been for some time, some of the witnesses thought it had

been for some years, judging from the appearance and condition of the wood, but that was a conjecture.   Mrs. Schekels said, however, it was when she went there in December, 1898, and that it got worse—that the balusters would fall out if you touched them.   It was admitted by the plaintiff's witnesses that the floor of the porch was sound.   Some question seems to have been raised in the testimony as to the right of Walsh to use the porch, but his own evidence, as well as that of some of the other witnesses, was to the effect that it was used by all the occupants.   That was the way, and apparently the only convenient way, to get into the yard, unless they went into the front hall.   A number of prayers were passed on by the Court, but under the view we take of the case it will only be necessary to consider the one which was refused, denying the right of the plaintiff to recover at all against the appellant.   The case was dismissed by the plaintiff as to Bowden, and a judgment was obtained against the appellant, from which this appeal was taken.

The theory of the appellee is that at the time the property was rented it was unsafe and in a dangerous condition, which the owner knew, or could by the exercise of reasonable diligence have known, and therefore she was responsible to any one lawfully on the premises who was injured by reason of that condition, although the property was in the possession of her tenant when the accident happened.   In support of that position he relies upon *Owings* v. *Jones*, 9 Md. 108; *Albert* v. *State*, 66 Md. 325; *State* v. *Boyce*, 73 Md. 469, and other cases of a like character.   There is no question about the responsibility *to strangers* of a landlord who leases premises which are a nuisance or must become so by their user, and receives rent, whether he is in possession or not, if injury ensue.   Nor do we doubt that he may be liable to strangers if he rents his property when it is in such condition as will likely produce injury ; and if the property be of a public character he cannot with impunity rent it in an unsafe condition and, if he does, may be required to answer to those who are brought upon it, at the instance of his lessee, for injuries they sustain.   Our own cases have determined the liability of the owner in such cases.

The injury complained of in *Owings* v. *Jones* was received by falling into a vault, appurtenant to the property of the defendant and built under the pavement of a public street. The boy who was injured was on a public street at the time where he and the public had the right to be, and if the owner leased the premises, with the vault appurtenant to it, which was either a nuisance at the time of the demise or must in the nature of things become so by its user, then he was unquestionably liable and could not protect himself by proving that at the time of the injury it was no·longer in his charge. So in *Albert* v. *State*, and *State* v. *Boyce*, the same principles are applied to the owners of public wharves. As was said in *Albert's case*, " A wharf, furnishing the only mode of ingress and egress to a summer resort, where crowds are invited to come, if in an unsafe and dangerous condition is certainly a nuisance of the worst character. It will not do for the owner knowing its condition, or having by the exercise of any reasonable care the means of knowing it, to rent it out and receive rent for it, but escape all liability when the crash comes. He who solicits and invites the public to his resorts, must have·them in a reasonable safe condition, and not in a condition to risk the lives and limbs of·his visitors." And other cases might be cited such as *B. & O. R. R. Co.* v. *Rose*, 65 Md. 485; *Irvin* v. *Sprigg*, 6 Gill, 200, and *Condon* v. *Sprigg*, 78 Md. 330, to illustrate the duty of owners of property to protect the public against injury resulting from nuisances on or appurtenant to their premises when the public has a right to be there. But those cases do not reach the question before us which is : In the absence of fraud or concealment is the landlord of the original tenant responsible for an injury sustained by a subtenant, by reason of the condition of the premises, when rented ·or afterwards, such as a defective balustrade on a porch ?

There is no implied·covenant requiring the landlord to make repairs. *Gluck* v. *Mayor, etc., of Baltimore*, 81 Md. 326. "There is no implied warranty on a lease of a house, or of land, that it is or shall be reasonably fit for habitation or cultivation. The implied contract relates only to the estate, not

to the condition of the property." "When a lease contains no express contract of warranty that the property is or shall be fit for the purpose for which it may be rented, there is no implied warranty to that effect, and in case the property falls down in consequence of some inherent defect, the lessor is not bound to repair, and yet the lessee will be compelled to pay the rent." *Hess* v. *Newcomer*, 7 Md. 337. After fully recognizing the landlord's liability to third persons, not claiming under the tenant, it is said, in *Taylor on Landlord and Tenant*, section 175A, that "the lessor's liability to the lessee is, however, much more restricted. As the former does not warrant the condition of the premises, and the tenant, because he can inspect them, assumes the risk of their state ; for any injury suffered by him during his occupancy by their defective condition, or even faulty construction, he cannot make the lessor answerable, unless there was misrepresentation, active concealment, or perhaps a total inability on the tenant's part to discover the defect before entering." There are many cases to that effect of which we will mention : *Doyle* v. *R. R. Co.*, 147 U. S. 413; *Moynihan* v. *Allyn*, 162 Mass. 272; *Gallagher* v. *Button* (Conn.) 46 At. Rep. 819; *Peterson* v. *Smart*, 70 Mo. 34; *Burdick* v. *Cheadle*, 26 Ohio St. 393; *Purcell* v. *English*, 86 Ind. 34; *Brewster* v. *De Fremery*, 33 Cal. 341; *Murray* v. *Albertson*, 50 N. J. L. 167; *Cole* v. *McKey*, 66 Wis. 500; *Towne* v. *Thompson*, 68 N. H. 317; *Bowe* v. *Hunking*, 135 Mass. 380; *Whitmore* v. *Orono Company*, 91 Me. 297; *Jaffe* v. *Harteau*, 56 N. Y. 398.

The reason of the rule is perfectly apparent. If the lessee knows the condition of the premises and rents it without requiring the owner to repair it, he takes it as he finds it and has no right to complain of injuries sustained on account of its condition. The owner not being compelled to keep it in repair, if the tenant desires to require that of him, he should so bind him by contract. In the absence of that, he must protect himself against dangers which are apparent to him. A building may be perfectly safe and suitable if used for certain purposes, while it may not be for others, and if the tenant has

had opportunity to inspect it before he rents it, the landlord cannot anticipate that he will use it in a way his intelligence and observation ought to tell him not to use it. If Bowden had been injured by reason of a defect such as is complained of here, he would have had no right to recover against the appellant. The defect was as apparent to him as to his landlady and if he, with full knowledge of its condition, entered upon the premises the principle of *caveat emptor* applies. If that were not so, no landlord would be safe in renting premises out of repair, although the tenant agreed to so accept them. As was said in *Robbins* v. *Jones*, 15 C. B. N. S. 240, "fraud apart, there is no law against letting a tumble-down house and the tenant's remedy is upon his contract, if any."

Nor does the plaintiff occupy any better position than Bowden would have done if he had sustained the injury. In *Taylor's Landlord and Tenant, supra*, the author follows what we have already quoted by adding "And the subtenant, servant, employee, or even customer of the lessee, is under the same restriction; because entering under the tenant's title, and not by any invitation, express or implied, from the owner, they assume a like risk." This is quoted with approval in *Cole* v. *McKey, supra*; *Clyne* v. *Helmes*, 61 N. J. L. 358, (39 Atl. 767.) See also *Towne* v. *Thompson, supra; Bowe* v. *Hunking, supra; Whitmore* v. *Orono Co., supra; Robbins* v. *Jones, supra*. In *Jaffe* v. *Harteau, supra*, it is said "The defendant, having leased the premises to Van Duzer, incurred the same liability to his subtenants for the safety and sufficiency of the premises for use for the purposes for which they were intended as they were under to him. It is not claimed by the appellant's counsel that the obligation to a subtenant is, in this respect, any greater than that to the lessee."

Walsh was a subtenant. He was not there by invitation of the appellant, express or implied, but was there as a tenant of Bowden. There can be no doubt, under the testimony, that he had the privilege of the use of the back porch, but that cannot help his contention. There are cases in which it is held that when an owner of a house rents rooms in it and re-

serves the hallways and porches to be used in common by the tenants, the landlord will be liable for their condition, but that is because he has kept them under his control and no one tenant is under obligation to keep them in repair. But without stopping to determine whether Bowden might, under the circumstances, have been responsible for the defective condition of the balustrade, the appellant had not reserved any part of the premises. She had rented the whole property to Bowden and had not retained control over any part of it. He had been in possession of it for over two years and there is not the slightest evidence to show either that the appellant knew of its dangerous condition or had been called upon or requested to repair it. It is true that some of the plaintiff's witnesses said that from their examination of the wood after the accident they were of the opinion that it had been rotten for years. But there is no evidence that the appellant knew or had any reason to suppose it was in such condition. This accident happened, so far as can be told from the testimony reflecting on that subject, by the child falling through a hole in the balustrade caused by some of the balusters falling out. There is no evidence they were out when the property was originally rented and surely a landlord who rents a house, as this was rented, is not required to examine each month to see whether there are any balusters out of a balustrade or any similar defect in the premises, especially when he is under no legal obligation to make repairs, if he finds any needed. But if she had known the balustrade was thus defective, either when she originally rented or afterwards, she would not have been liable to the tenant or the subtenant, as is shown by the authorities cited above.

If a landlord is to be held responsible for injuries resulting as this did, at the instance of a subtenant who had the same opportunity to know the condition of the premises as any other tenant would, it would be a responsibility that few would care to assume. Walsh had been over the porch the day of the accident and had also lived in the house on a previous occasion—a few months before the child was killed. He there-

fore knew, or had the opportunity to know, the condition of the balustrade. Mrs. Smith did not know it, so far as appears from the record, but according to the contention of the appellee she is to be held responsible merely because she is the owner, although the house was not in her possession, but was in that of her tenant's tenants. Bowden himself unquestionably could not have recovered for an accident, but Walsh, who only had the right to be there through Bowden, seeks to do so because he claims to be a third party. If that could be done, then after a landlord has rented his house to a person who took it as he found it, the latter could make him responsible to a half dozen or more persons by simply renting out a room to each, with the use of the halls and porches in common. We do not understand the law to go to that extent. On the contrary, when one goes into possession of premises, or part of it, with the right to use other parts in common with the other tenants, as a subtenant, he occupies no better position against the owner than the original tenant would, for injuries sustained by reason of the defective condition of the premises which was equally apparent to all observers. A few nails and a board or two would have remedied this trouble, and, certainly in the absence of notice to her, the appellant might well have assumed that neither Bowden nor those occupying the rooms would permit the balustrade, or any part of it, to give way or remain away, to the danger of anyone when it could so easily have been fixed, so as to have avoided such an accident as occurred.

*Albert's case* and others of that kind are wholly different from this. Of course the law will not permit an owner to rent property of a public character where people in large numbers are likely to gather, if he knows or ought to know it is unsafe, and then shelter himself behind a lease. There are a number of cases in which the owners had leased wharves, public halls, piers, or other property of a public nature and were held liable. Some of them, including *Albert's case*, are cited in those we have referred to. The public are deemed to be invited in such cases by the owners and they cannot receive

rent for such uses and permit their tenants to bring, in large numbers, upon their property those who do not have the opportunity to inspect the property, unless they have exercised due care to see that it is safe. Such a place in bad condition is indeed "a nuisance of the worst character." So with defects and dangerous places in and about public highways where the public have the right to be. But such cases can have no controlling effect in one such as we have before us, and for the reasons we have given the appellant is not liable. As this suit is for the loss of the services of the child, which was under the care and control of her father, the equitable plaintiff, who seeks to recover it is, of course, unnecessary to discuss it from the standpoint of the child. She was only there at the instance of her father and as he, by reason of his relation to the property, as tenant of Bowden, cannot hold the owner responsible for such defect, he cannot recover against her for the death of the child, even if a member of the family of a tenant could sue for injuries sustained when the tenant could not, which has been decided in the negative in *Moynihan* v. *Allyn, supra,* and elsewhere.

As we are of the opinion that the appellant was not entitled to recover, the prayer, offered at the end of the case, instructing the jury that there is no evidence legally sufficient to entitle the plaintiff to recover, and that their verdict must be for the defendant, should have been granted. It is therefore unnecessary to discuss any of the other points raised.

> *Judgment reversed without awarding a new trial, the equitable plaintiff (Appellee) to pay the costs.*

(Decided January 23rd, 1901.)