## THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* ADOLPH ROSE.

*Action for Damages—Negligence—Evidence.*

The defendant, a railroad company, was the owner of a pier which was used for the accommodation of those engaged in traffic with it. The ground abutting on the pier also belonged to the defendant, and upon it were constructed tracks for the running of cars and engines, for the purpose of conveying articles of merchandise to and from the pier, and other piers and wharves adjacent thereto. There was also a trestle, with railway tracks on it, and a gangway on the side, on which persons could walk. At the end towards the pier the ascent to, and descent from, this trestle was by a stairway. In descending this stairway, the plaintiff, who was a steward upon a vessel lying at the pier by permission of the defendant, was injured by a fall occasioned by the broken condition of the steps. In an action to recover damages, on the ground that the injury was caused by the negligence of the defendant in not keeping the said steps in proper condition to afford a safe transit, it was HELD:

1st. That under the arrangement between the defendant and the company owning the vessel, persons employed on board the vessel had a right of transit over the property of the defendant.

2nd. That if there was no particular road or pathway designated and set apart for their use, they were constrained to seek such route as they found open and convenient, and the only obligation resting on them was the observance of due care and caution in the avoidance of danger.

3rd. That the defendant, however, had a right, if it saw fit, to inhibit the use of the trestle, and restrict the passengers to the use of the ground below.

4th. That the testimony of a witness who said that a custom-house officer had directed *him* to go over the trestle, was inadmissible; it not appearing that the officer was an agent or employé of the defendant, and the direction being given not to the plaintiff but to a stranger to the cause.

5th. That the plaintiff's condition of health many years anterior to the accident, was inadmissible to prove his physical condition at the time of the accident.

6th. That the defendant was entitled to prove that the steps were constructed for the use of its employés.

7th. That it was competent for the defendant to show for what purpose the trestle was constructed, and how it had been used before it was condemned, as also that during the afternoon previous to the accident to the plaintiff, persons leaving the ship had been cautioned not to pass up the trestle.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The caused was argued before ALVEY, C. J., YELLOTT, STONE, ROBINSON, RITCHIE, and BRYAN, J.

*W. Irvine Cross*, and *John K. Cowen*, for the appellant.

*Archibald H. Taylor*, and *William S. Keech*, for the appellee.

YELLOTT, J., delivered the opinion of the Court.

The appellee, the plaintiff below, was employed as steward upon the steamship Leipzig, of the North German Lloyd Line, which ship was lying at pier No. 9, in the harbor of Baltimore, discharging and taking in cargo. The said pier is the property of the appellant, and is used for the accommodation of those engaged in traffic with it. The ground abutting upon said pier also belongs to the appellant, and on it are constructed tracks for the running of cars and engines, for the purpose of conveying articles of merchandise to and from this pier and other piers and wharves adjacent thereto. There is also a trestle, with railway tracks on it, and a gangway on the side, on which persons can walk in going to and from Towson Street.

Baltimore and Ohio Railroad Company *vs.* Rose.

At the end towards the pier the ascent to, and descent from, this trestle is by a stairway, and in descending this stairway the appellee was injured by a fall occasioned by the broken condition of the steps. He brought suit against the appellant in the Court below for the recovery of damages, on the ground that the injury was caused by the negligence of the defendant in not keeping the said steps in proper condition to afford a safe transit. The verdict and judgment being for the plaintiff the defendant appealed.

It is admitted by an agreement in the record "that the steps from which the plaintiff fell were a part of a trestle work, situated on the land of the defendant adjoining the pier also of the defendant, and were the exclusive and private property of the said defendant." It is also agreed between the parties to the cause that "the piers of the Baltimore and Ohio Railroad Company, of which pier No. 9 mentioned, is one, are used by the ships of the North German Lloyd Steamship Company Line, for the purpose of lying at them, and discharging freight and passengers upon them, by permission of the defendant, without wharfage charges, paid by the owners of said steamships, or others, to the defendant, but in order that the freight and passengers, brought by said steamships, may be transferred from the ships of said steamship company to the cars of said defendant, lying upon certain tracks of said defendant, constructed out upon said pier; (no reference here being had to the tracks upon the elevated trestle on shore near by, used for coal cars for the purpose of making said transfer more conveniently.")

The trestle referred to is about fourteen feet in elevation at the end in proximity to the pier, and is ascended by a stairway. At the other end is an outlet to Towson street. This trestle had three tracks for cars and a gangway about three feet wide with a hand-rail on the side. At the time of the accident the tracks were only

used for the purpose of placing empty cars in position for making up trains, and loaded cars were not run on the trestle which had been abandoned for that purpose. The ground below was covered with tracks constructed for the conveyance of freight to and from the vessels lying at the piers. There was a narrow foot-path on the side adjacent to the trestle, which was not marked by any curbing. There is no evidence in this record of the construction of any way by the defendant for the especial and exclusive use of persons passing to and from the vessels, and it is proved that many passengers used the trestle while others selected the pathway below.

Undoubtedly under the arrangement existing between the two companies, persons employed on board the steamer had a right of transit over the property of the defendant. If there was no particular road or pathway designated and set apart for their use, they were constrained to seek such route as they found open and convenient, and the only obligation resting on them was the observance of due care and caution in the avoidance of danger. The defendant, however, had a right, if it saw fit, to inhibit the use of the trestle, and restrict the passengers to the use of the ground below. There is evidence that this was done by a notice placed in a conspicuous position, but this evidence is met by countervailing proof, and the fact thus in dispute, should necessarily be left for ascertainment by the jury.

The obligation of the defendant to keep any property, over which other persons have a right to pass, in a safe condition, cannot be questioned. As was said by the Supreme Court of Massachusetts in *Sweeny vs. Old Colony and Newport Railroad Company,* 10 *Allen,* 373, "the general rule or principle applicable to this class of cases is, that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held

Baltimore and Ohio Railroad Company *vs.* Rose.

out any invitation, allurement or inducement, either express or implied, by which they have been led to enter thereon." If the owner, either "directly or by implication, induces persons to enter upon and pass over his premises, he thereby assumes an obligation that they are in a safe condition suitable for such use, and for a breach of this obligation he is liable in damages."

This is the recognized principle in this country and in England. In *Corby vs. Hill*, 4 *C. B. N. S.*, 556, COCKBURN, C. J., said:

"The proprietors of the soil held out allurement whereby the plaintiff was induced to come upon the place in question; they held out this road to all persons having occasion to proceed to the asylum as a means of access thereto. Could *they* have justified the placing an obstruction across the way, whereby an injury was occasioned to one using the way by their invitation? Clearly they could not. Having, so to speak, dedicated the way to such of the general public as might have occasion to use it for that purpose, and having held it out as a safe and convenient mode of access to the establishment, without any reservation, it was not competent to them to place thereon any obstruction calculated to render the road unsafe, and likely to cause injury to those persons to whom they had held it out as a way along which they might safely go."

There is a similar adjudication in *Chapman vs. Rothwell, Ell. Black. & Ell.*, 168, where the same question was presented.

If, therefore, any one is injured in consequence of the negligence of the proprietor, in this respect, an action for damages can be maintained, even if the unsafe condition of the premises was caused by the act of other parties, and the owner allows them to remain in that condition. As was said by Lord ELLENBOROUGH in *Coupland vs. Hardingham*, 3 *Campb.*, 398, the defendant is liable for the consequences "in the same manner as if he, himself, had originated the nuisance."

But this principle is qualified and restricted in its application by another which is obviously just and proper. If the defendant, as soon as he is informed of the existence of the nuisance, takes the proper steps to remove it, and, in order to prevent injury to any one, gives warning of the danger by placing a barrier of any sort so that no prudent person would cross it, he is clearly not liable if rash and reckless individuals disregard the intimations of danger thus given. The evidence of defendant on this point is, that the steps were broken down on Sunday, in the afternoon, and that very soon after the occurrence of this accident a rope was extended across at each entrance to the steps, and a light suspended at the top, so as to warn persons of the existence of danger and that, notwithstanding this warning, the plaintiff passed under the rope and was thus injured by his own recklessness. The whole of this evidence is contradicted by testimony offered on the part of the plaintiff, and, these material facts being in dispute, could only be properly determined by the jury.

It necessarily follows from what has been said that the defendant's first prayer, which denied the right of the plaintiff to recover on the evidence offered in the cause, was properly rejected by the Court below. This prayer could only have been granted by assuming the truth of all the evidence offered by the plaintiff, and if the evidence is true, then, when considered in connection with what has been said in regard to the plaintiff's right of transit over the defendant's property, it clearly establishes the right of recovery in the action.

The defendant's first bill of exception relates to the admission of the testimony of the witness Gatheman, who said that a custom house officer had directed him to go over the trestle. This evidence ought to have been rejected and there was error in admitting it. It does not appear that the custom house officer was an agent or employé of the defendant, who could not, therefore, be af-

fected by any direction given by an unauthorized party. Nor was the direction given to the plaintiff but to a stranger to the cause.

The evidence of the same witness in relation to the condition of the steps, is the foundation for the second bill of exception. The evidence was properly admitted by the Court as its pertinency to the issue is apparent.

The evidence, included in the third bill of exception, ought not to have been admitted, and there was error in the ruling of the Court below in allowing it to be introduced. The witness was asked what sort of a boy was Rose in point of health. The witness had known him many years before when they were at school in Germany. His condition of health many years anterior to the accident could not prove his physical condition when the accident occurred.

The evidence objected to in the fourth bill of exception was properly admitted, and this remark applies equally to that in the fifth bill of exception. The evidence related to the character and condition of the outlets from the pier and was pertinent to the issue.

The sixth bill of exception founded on the rejection of the defendant's first prayer, has already been disposed of by what has been said. The defendant desired to offer evidence, tending to prove that the steps were constructed for the use of the employés of said defendant. This evidence was rejected, and this ruling forms the foundation for the defendant's seventh bill of exception. The defendant was entitled to have this evidence presented for the consideration of the jury, and there was error in rejecting it.

The defendant's counsel asked the witness, Sapp, "Have you any knowledge of any person, during that afternoon, cautioning those who were leaving the ship not to pass up this trestle?" The Court ruled that this question was improper, and this ruling, on which the eighth exception is

founded, was erroneous.   The same remark applies to the
ninth exception founded on the rejection of evidence offered
by the defendant, and tending to prove what the trestle
was constructed for and what use it had been put to before
it was condemned.   This evidence was relevant to the
issue and tended to enlighten the jury in regard to the
matters involved in controversy.

The tenth and last bill of exception is founded on the
ruling of the Court below in granting the plaintiff's third
prayer and in refusing to grant the first, fourth, fifth,
sixth, and seventh prayers of the defendant.

The third prayer of the plaintiff is objectionable because
it ignores a portion of the evidence in the cause which is
important and material and which, if believed by the jury,
would destroy the plaintiff's right of action.   There is evi-
dence that there was a notice to persons not to use the
trestle.   Now a belief in the verity of this evidence would
not be inconsistent with a belief in the existence of all the
facts recited in the prayer in question.   If the prohibition
of the defendant extended to the plaintiff, as it must have
done, if the jury should find there was such a prohibition,
he was there as a trespasser and certainly not entitled to
recover.   And yet the prayer, ignoring this fact which
might be believed, declared, as matter of law, that he had
a right to use the trestle.   There was, therefore error in
granting this prayer.

The fourth prayer of the defendant, which was rejected,
after the usual and formal recital of facts not in dispute
informs the jury that if they believe, from the evidence,
that at the place where the plaintiff went on the trestle a
lamp was burning at night and a sign with the words
"keep off," the plaintiff cannot recover in this action.
From what has been already said the legal proposition
enunciated in this prayer must be recognized as correct in
principle, and there was error in the rejection of this
prayer.

The fifth and sixth prayers of the defendant were properly rejected. The propositions enunciated in these two prayers are identical, and require the plaintiff to prove that the defendant authorized the use of the trestle as a thoroughfare, or, by some positive act recognized it as such. This language tended to mislead the jury. It has already been said that a right of transit to and from the pier was implied in the arrangement between the two companies, and that in the absence of proof that a particular way had been constructed and designated for the purpose of ingress and egress, persons could use any way not prohibited by the defendant. The same remark is applicable to the seventh prayer of the defendant which was properly rejected.

Because of the errors in the rulings of the Court below, which have been indicated, its judgment must be reversed.

*Judgment reversed, and*
*new trial awarded.*

