(Decided December 20th, 1898.)

---

## S. KANN, SONS & COMPANY *vs.* WILLIAM MEYER.

*Negligence—Injury to Workmen on Elevator—Dangerous Premises—Legal Sufficiency of Evidence.*

Plaintiff was employed by defendant to repair a freight elevator in the cellar of his building. Alongside of the freight elevator was a passenger elevator, and when this ascended a piston rod became elongated and ran in close proximity to the freight elevator. Plaintiff was not notified of this danger and the cellar was dark so that he did not see the operation of the passenger elevator nor did he hear it. While he was at work on the freight elevator he was caught and crushed by the piston rod of the passenger elevator. Defendant knew that plaintiff was then at work there and did not cause the

passenger elevator to stop running. *Held*, that there was sufficient evidence of defendant's negligence to be submitted to the jury, and that the plaintiff was not guilty of contributory negligence in law.

Appeal from the Superior Court of Baltimore City (RITCHIE, J.). At the trial the following prayers were offered:

*Plaintiff's 1st Prayer.*—If the jury find from the evidence that the defendants were in possession of a store and premises in the city of Baltimore, in which they maintained and operated adjoining elevators, one of which was applied and operated as a passenger elevator, and the other as a freight elevator, both running from the basement to the top of said store, and that the machinery and appliances operating the same were so arranged and adjusted that the piston rod of each nearly approached the other in the basement of said building, when either elevator ascended to the top or upper floor thereof, so that thereby it became and was dangerous for a person to make repair on one thereof in said basement, while the other was in motion and running to said top or upper floor; and if they further find that the defendants knew, or by the exercise of ordinary care could have known, that it was dangerous to make repair of one of said elevators in said basement while the other was in motion and running to said top or upper floor, and that they directed or procured the plaintiff to repair the freight elevator in said basement; and further that defendants, knowing that plaintiff was working on the freight elevator, continued to keep the passenger elevator in motion and running to said top or upper floor while he was so working, and gave him no notice of its proximity or of the danger therefrom; and if they further find that the plaintiff by reason of the darkness did not see the passenger elevator, and that its operation was so noiseless that he did not hear it, and that he did not know it was there, and that by the exercise of ordinary care he could not have known of the danger of his position in said basement while repairing said freight

elevator, and that while so engaged heretofore, to wit, on or about the 8th day of December, 1896, was crushed by the piston rod of said passenger elevator as the same approached the top or upper floor and injured, and that said injury resulted directly from the want of ordinary care and prudence of the defendants, as above set forth in the premises, and not from the want of ordinary care and prudence on the part of the plaintiff in the premises directly contributing, as set forth to the injury, then the plaintiff is entitled to recover.—(*Granted as modified.*)

The plaintiff's second prayer was rejected and his third prayer related to the measure of damages.

*Defendants' 1st Prayer.*—That the plaintiff is not entitled to recover under the pleadings in this case, unless they find from the evidence that it was necessary to stop the running of the passenger elevator in order to enable the plaintiff to repair the freight elevator in safety; and even if they shall so find, they must further find from the evidence that the defendants had knowledge that the stoppage of the passenger elevator was necessary to the safety of the plaintiff while so at work, or means of knowledge that were not open to the plaintiff.—(*Granted.*)

*Defendants' 2d Prayer.*—If the jury find from the evidence that when the freight elevator mentioned in the evidence, broke down and needed repairing, the defendants, through their manager, the witness Baker, notified Bartlett, Hayward & Co., from whom they had purchased the elevator, to send competent men to make the repairs, and that in pursuance of said request, Bartlett, Hayward & Co., sent the plaintiff who undertook to make said repairs without asking to have the passenger elevator stopped while he was engaged in making said repairs, then the defendants are not chargeable with negligence for not having stopped said passenger elevator, and the verdict of the jury should be for the defendants upon the issues joined; unless they further find that under such circumstances and under all the circumstances of the case, a person of ordinary prudence and care would, nevertheless, have had said passenger ele-

vator stopped. The mere fact that the passenger elevator was continued in use under the circumstances, was not necessarily negligence.—(*Granted.*)

*Defendants' 3d Prayer.*—That it appears from the undisputed evidence in the case, that during the afternoon and morning preceding the accident to the plaintiff, two other workmen from the firm of Bartlett, Hayward & Co., co-employees of the plaintiff, had been engaged in making repairs to the said freight elevator; that during the entire time, the said co-employees of the plaintiff were so at work the passenger elevator and the machinery attached thereto were in constant operation, and no request was made of the defendants to stop the running of the same, and therefore the defendants were entitled to presume that it was not necessary to stop the operation of the said passenger elevator while the plaintiff and the witness Winkler were engaged in making repairs to the machinery of the said freight elevator, and their failure to stop the running of the said elevator was not negligence on their part under the circumstances above mentioned, and therefore the verdict must be for the defendants under the pleadings and issues joined.— (*Rejected.*)

*Defendants' 4th Prayer.*—That even if the defendants had knowledge of the fact that it was necessary to the safety of the plaintiff while at work, as testified to, to stop the operation of the passenger elevator, nevertheless, the undisputed evidence shows that the said elevator and its machinery was not in fact stopped, but continued in operation only a few feet away from where the plaintiff was at work, during the time he was so at work, as testified to by the witness Winkler, and by the witnesses of the defendants; that said machinery was, in fact, seen by the said Winkler by the aid of the light in the cellar at the time of the accident; that said machinery was of so great a size that it could be seen in operation by any one without the aid of any light, in addition to that which was in the elevator room at the time, as testified to by the witnesses, Wiener and Winkler, and therefore the conduct of the plaintiff in commencing and

continuing at work, in the manner testified to by him, when by the exercise of ordinary care he could have seen that said machinery had not in fact been stopped, and avoided the danger, constituted such contributory negligence on the part of the plaintiff as to disentitle him to recover and therefore their verdict must be for the defendants upon the pleadings and issues joined in this case.—(*Rejected.*)

*Defendants' 5th Prayer.*—That even if they shall find from the evidence that it was necessary to the safety of the plaintiff while at work upon the freight elevator, that the defendants should stop the operation of the passenger elevator, nevertheless, if they shall further find that said elevator was not in fact stopped, but continued in operation the whole time that the plaintiff was at work as aforesaid, and that the light was amply sufficient to enable the plaintiff to see, and the sound amply sufficient to enable the plaintiff to hear, that the said passenger elevator was in operation, by the exercise of ordinary care and caution on the part of the plaintiff, and to thus warn him of the danger of his position, then the conduct of the plaintiff in continuing at work under the circumstances aforesaid, and in exposing himself in the manner testified to by him, constituted contributory negligence on his part, such as to disentitle him to recover, and their verdict must be for the defendants under the pleadings in this case.—(*Granted.*)

*Defendants' 6th Prayer.*—There is no evidence in this case legally sufficient to show that the defendants failed to exercise ordinary care in the conduct and management of the elevator mentioned in the declaration, and there being no legally sufficient proof of one of the material averments of the declaration, the verdict must be for the defendants upon the issues joined.—(*Rejected.*)

*Defendants' 7th Prayer.*—That there is no evidence in this case legally sufficient to entitle the jury to find that the defendants have violated any legal duty which they owed the plaintiff, and therefore their verdict must be for the defendant upon the issues joined.—(*Rejected.*)

*Defendants' 8th Prayer.*—That it appears from the

undisputed evidence that the plaintiff could have avoided the injury to him by the exercise of reasonable care and caution, and that therefore their verdict must be for the defendant upon the pleadings in this case.— (*Rejected.*)

*Defendants' 9th Prayer.*—There is no evidence in this case legally sufficient to prove that the defendants failed to exercise ordinary care and prudence to render and keep their premises reasonably safe for the performance by the plaintiff of the business or work for which he came there, and therefore their verdict should be for the defendants.—(*Rejected.*)

The jury returned a verdict for the plaintiff for $5,000.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS, BOYD and PEARCE, JJ.

*William L. Marbury* (with whom was *J. Markham Marshall* on the brief), for the appellants.

*William Colton* (with whom was *Edward L. Ward* and *H. C. Shimer* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The plaintiff brought suit against the defendants to recover damages for personal injuries received while repairing a freight elevator on the defendants' premises. He recovered a judgment of $5,000 and upon exceptions to the granting by the Court of the plaintiff's first and third prayers and the refusal to grant the defendants' third, fourth, sixth, seventh, eighth and ninth prayers, and to the overruling of certain special exceptions, the defendants have appealed.

It appears from the record that the defendants, Sigmund Kann and Louis Kann trading as S. Kann, Sons and Company, were the owners of a certain building on South Broadway, in the city of Baltimore, in which they conducted a " department store." In this building there were two elevators, one a passenger and the other a

freight elevator, running from the cellar to the top floors, the building being five or six stories high. The machinery of both elevators was located in the basement of the store, in what was called "the elevator room," and adjoining one to the other.

These elevators it is stated were operated by a hydraulic pushing engine; the machinery of both elevators being the same and consisting of a wheel about three feet in diameter over which the cables ran, moving the elevators up and down. The wheel was at the end of a piston rod, and as the passenger elevator ascended to the top floor, the piston rod and wheels attached were elongated, so that it came in close proximity to the frame which supported the machinery of the freight elevator.

The plaintiff is a machinist by trade and was at the time of the injury in the employ of Bartlett and Hayward, Baltimore, also machinists, and had been sent by this firm on the day of the accident, at the request of the defendants, to make certain repairs on the freight elevator, which had been broken.

The declaration states, that on the 8th of December, 1896, the frame or carriage of the freight elevator being broken and out of repair in the cellar or basement, the defendants procured and invited the plaintiff, who was a machinist and iron worker, to come upon their premises for the purpose of repairing and working on the broken freight elevator carriage or frame in the cellar or basement; and that it was then and there the duty of the defendants to exercise ordinary care and prudence to render and keep their premises reasonably safe for the performance by the plaintiff of the purpose or business in hand, and not expose him to unnecessary risk or danger in the premises; and that in default and neglect of their duty in the premises the defendants did not exercise ordinary care and prudence to render and keep their premises reasonably safe for the performance by the plaintiff of the purpose or business in hand, and did expose him to unnecessary risk and danger in the premises, while in the exercise of ordinary care and pru-

dence on his part; whereby and in consequence whereof the plaintiff was crushed while engaged at work upon the frame or carriage of the freight elevator by the wheels attached to the piston rod of the passenger elevator in the cellar or basement, and was permanently injured and damaged about his back and sides, head and limbs, confined to his home for a long period of time, made to suffer great physical pain and mental anguish, incapacitated from working at his trade of machinist or iron worker, and otherwise injured and damaged. It further appears that at the time of the accident, the plaintiff was at work on the machinery of the freight elevator, facing another workman, with his back to the passenger elevator; that while in this position he was caught and pressed against the cross bar of the freight elevator, by the elongation of the piston rod of the passenger elevator; that this piston rod was about four or five feet from the position where they were at work when the elevator was in the basement, but when it ascended to the top floor, the rod extended to about six inches of the cross bar between the two carriages.

The case was tried before a jury and the judgment being for the plaintiff, the defendants have appealed.

It will be thus seen, that the questions presented in this case are the usual ones in damage suits, and they are whether the defendant was guilty of negligence, and second, was the plaintiff guilty of such contributory negligence as would have warranted the Court in withdrawing the case from the consideration of the jury. We have carefully examined the testimony as disclosed by the record, and without undertaking to review it here, except so far as the purposes of this case may require, we are of the opinion that there was evidence legally sufficient to take the case to the jury upon the questions of fact.

The defendants' sixth, seventh, eighth and ninth prayers, and the defendants' special exception to the plaintiff's first prayer, being then practically a demurrer to the evidence, were under the facts and circumstances of this case properly refused by the Court.

In the case of *Donovan* v. *Gay*, 97 Missouri 444, involving a somewhat similar question, the Court said: " All the parties knew that the carpenter's work was to be done and that it could not be done with safety while the elevator was in operation. It was the duty of the defendants' servants to use that care and caution which a prudent person would have used under like circumstances . . . It was the duty of both the operator and the agent to stop running the elevator when plaintiff made known his intention to perform the work. The duty to stop the elevator arose from the known fact that plaintiff was about to perform the work which could not be done with safety with the elevator in operation. This is not a case of a tresspasser or one who is in a position where he has no right to be . . . It was the duty of the defendant to use such care and caution in the performance of the work as a reasonably prudent man would have used under like circumstances, and whether he did use that care or not is a question for the jury to determine under all the evidence. It should be determined only in the light of all the evidence."

And in *Indemaur* v. *Dames*, L. R. 2 C. P. 313—a case in which a plaintiff (like the one in the case here) was on certain premises, on lawful business in the course of fulfilling a contract, in which both the plaintiff and defendant had an interest—KELLY, C. B., in affirming the judgment of the Court below, said: " With respect to such a visitor at least, we consider it settled law that he, using reasonable care on his part for his own safety, is entitled to expect that the occupier shall on his part use reasonable care to prevent damage from unusual danger which he knows or ought to know; and that when there is evidence of neglect the question whether such reasonable care has been taken, and whether there was such contributory negligence in the sufferer, must be determined by a jury as a matter of fact."

In *Cooley on Torts*, 718, the law is thus laid down: " If one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is

not inviting them into danger and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit. And this rule obtains and is recognized in both the English Courts and in the Courts of this country." *Bennett* v. *Railroad Co.,* 102 U. S. 585; *Wise* v. *Ackerman,* 76 Md. 375; *Powers* v. *Harlow,* 53 Mich. 507; *Gordon* v. *Cummings,* 152 Mass. 514; *Lorentz* v. *Robinson,* 61 Md. 64 and 70; *Benson* v. *Baltimore Traction Co.,* 77 Md. 539.

We think there was evidence for the jury in the case now under consideration both on the question of want of due care on the part of the defendants, and of negligence on the part of the plaintiff, and this being so, the Court was bound to submit the case to the jury.

The plaintiff testified: " That when he returned to the store he saw Mr. Kann, who was standing in the store on the first floor between the cellar steps and the store door, and was asked by him where that man was who had been working on the elevator in the morning, and answered that he did not know anything about that man; Mr. Kann then told him to hurry up and get to work on the elevator, and he went down into the cellar and went to work on the elevator, and had almost finished putting the straps and belts on when he was caught; that he supposes he was at work in all about ten or fifteen minutes before he was hurt; that while he was working on the straps he had his face towards the freight elevator, the one he was working on, and that while he was so engaged he was caught by the piston of the passenger elevator, which he could not hear, and did not know of, he didn't know it was dangerous or he would not have worked there, it ran so easily, and crushed him; that he had a drift pin in one hand and a wrench in the other, and standing with his back to the passenger elevator; he was tightening up the bolts on the freight elevator; that he was assisted in his work by a fellow-workman named Winkler, who helped him to straighten up the nuts, he on one side and Winkler on the other; that he knew it was Mr. Kann he saw in the afternoon when he returned to the store, because he

heard people call him Mr. Kann, and that nobody had told him that the piston rod worked in a way to catch him while he was at work, and that when he was there in the morning it was standing still, and the same in the afternoon, and he never saw it work, and the freight elevator was still because it was broken; that it was dark in the cellar where the elevator was and they got a couple of candles to work by; that you have to have candles, and that sometimes when the light goes out you have to run for matches; that the elevator was not boxed in or fenced in in any way, but that it was all open there."

Upon redirect examination the plaintiff testified that when he said that both of the elevators were in the same " pit," he meant they were both in the same cellar; and in answer to the question, " you say in answer to Mr. Marbury, that when you went into the store, when you saw Mr. Kann, you told him to stop the machinery "; the witness answered, " yes sir, I told him I was going to work on the elevator in the cellar," and that the occasion was the time of his second visit to the store in the afternoon of the day of the accident; that he thought the wheels of the freight elevator had been taken away before he went to work there.   The testimony further shows: that the plaintiff was putting in the bolts with his right hand at the time of the accident; was putting the nuts on and tightening them with a wrench; that witness Winkler and the plaintiff were facing each other, and that the plaintiff had his back turned towards the passenger elevator; and that he was about fifteen or twenty minutes engaged in this work, and while he was so engaged the piston rod of the passenger elevator came extending back to where they were at work and caught the plaintiff and jammed him up against the carriage of the freight elevator on the cross bar.

There was other evidence on the part of both plaintiff and defendants, one tending to show negligence and the other contributory negligence, but as these were questions for the jury we need not further consider it here.

The law of the case was fairly and fully submitted by the Court, in the plaintiff's first and third prayers, and in the defendants' first, second and fifth prayers. The defendants' third and fourth prayers were properly rejected and we do not understand that it is contended that they should have been granted.

For the reasons we have given the judgment will be affirmed with costs.

*Judgment affirmed.*

(Decided December 20th, 1898.)

McSHERRY, C. J., and FOWLER, J., dissent.