# STATE OF MARYLAND use of ARABELLA ARNOLD *vs.* AMON GREEN & CO.

*Negligence—Injury Caused by Elevator to Person Standing on Platform Over it—Inspection by Jury of Premises Where Accident Occurred.*

Defendant's hydraulic elevator was so constructed that in ascending it lifted the platforms or trapdoors covering the hatchways at each floor, carrying them up, and in descending it left these coverings at their appropriate places on each floor thus closing the apertures. The opening on each floor was protected by a railing around it, removable on one side so as to allow access to the elevator. Plaintiff's decedent had been a customer of the defendant for some years and was well acquainted with said elevator and the mode of its operation. On the day of the accident which caused his death he was taken on the elevator to a room on the fourth floor of defendant's building for the purpose of inspecting certain goods which he wished to buy. He was left there alone with directions to shake the signal rope of the elevator when he wished to be brought down. The room in question was well lighted.

The signal was given some time afterwards, and when the porter in response thereto took the elevator to that floor he found the guard of the railing down but the deceased was not visible, and it was soon discovered that he had gotten upon the platform over to the elevator and had been carried up by it and crushed against the rafters above. No one witnessed the accident and no explanation was offered of how or why the deceased opened the rail and stood upon the covering of the elevator after giving the signal. Neither the elevator nor the machinery operating it was defective or out of repair. *Held*, that these facts do not constitute a proper case for the application of the maxim, *res ipsa loquitur*, and that since there was no evidence that the injury was caused by anything hidden or in the nature of a trap, or that the defendant was guilty of any negligence, the plaintiff is not entitled to recover.

Code, Art. 75, sec. 93, provides that it shall be lawful for the Court in any action at law, upon application of any party thereto, to make any order for the detention, preservation or inspection of any property being the subject of such action, to authorize any person to enter upon any land or building in the possession of any party to the action, to authorize any observations to be made or experiments to be tried which may seem expedient for the purpose of obtaining full information or evidence. In an action to recover damages for an injury caused by the elevator in defendant's building, the plaintiff asked the Court to send the jury to inspect the building and the elevator. To this the defendant objected. *Held*, that the said statute does not give to the Court power to direct the jury to inspect the premises, and that such inspection, in a case like this, is allowed only with the consent of both parties.

Appeal from the Court of Common Pleas of Baltimore City (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Charles J. Bonaparte* (with whom was *Paul M. Burnett* on the brief), for the appellant.

The facts of the case were undisputed, and, indeed, rested wholly in the knowledge of one of the defendants and one of their employees, who were examined as witness for the plaintiff. It is but fair to say that they testified with somewhat exceptional candor.

Around the elevator there was a guard-rail with a hinged section, which could be opened to obtain access to the elevator. When Arnold was found, after the accident, this guard

was open, but there was no evidence to show when or by whom it had been left open. The elevator was worked by a number of ropes, *some* of which could be reached by a person standing outside the guard-rail. At the time when Arnold was taken to this fourth floor no instructions whatever were given to him as to the use of the elevator, but some two hours later the porter, Nauman, having occasion to go to the fourth floor, called to him from the other end of the building to ask whether he wished to go down. At this time Arnold was busily engaged sorting the twine. He replied that he wanted to finish his work there first, and the porter told him, when he was ready to come down to shake the rope. The rope which the porter meant was one which could have been reached from the outside of the rail, but the reason for shaking that rope rather than another was not explained to Arnold, and, under all the circumstances, there is room for a very reasonable doubt whether he understood which rope was meant. Some little time afterwards one of the ropes was heard to shake, and the same porter started the elevator, which went up very rapidly, to bring down Arnold. When he reached the floor he could see nothing of Arnold, until his attention was attracted by a peculiarity in the appearance of the sections of the floor which had been carried up by the frame work of the elevator, and, on lowering the latter slowly, he discovered the old gentleman unconscious and fatally injured, having been crushed between the detached segment of the floor and the rafters. He was then taken down, removed to a hospital, and died about an hour afterwards.

It seems plain that Arnold supposed on going to the elevator that it was still in place, the crack running around the detached section of the floor resembling so closely the floor of the elevator. He made no attempt, however, to work the elevator himself, but, obeying the instructions which had been given him, shook one of the ropes, supposing, doubtless, that the elevator would be drawn down from below. Whether the guard-rail was or was not in place is altogether uncertain, and cannot weigh on either side in judging of the evidence;

but it seems clear, and was, indeed, frankly admitted, that no sufficient instruction, indeed no instruction whatever as to the character and management of this dangerous piece of machinery, had been given to the deceased. While standing, as he imagined, on the elevator floor, expecting to be brought down, he was suddenly and violently carried up and fatally crushed against the rafters. We may therefore assert with confidence that his death was caused :

*First,* by the fact that the defendants used a freight elevator to convey their customers from one part of their place of business to another ;

*Second,* by the fact that the construction of this elevator, in relation to the third and fourth floors of the building was needlessly dangerous for a person not instructed regarding it. We say *needlessly,* because the defendants had removed this danger by a very slight alteration, involving but a trifling expense, with respect to the second floor, and could obviously have done the same with respect to the third and fourth ;

*Third,* by the fact that no warning of danger and no information as to the construction and peculiarities of the elevator had been given to this customer before he met with the fatal injury.

This case closely resembles *Chapman* v. *Rothwell,* El. Bl. & El. 168, and "comes within the principle that persons inviting others on to their premises are answerable for anything in the nature of a trap." See also *Smith* v. *London, etc., Dock Co.,* L. R. 3 C. P. 333; *Indermaur* v. *Dames,* L. R. 1 C. P. 274; s. c. on appeal, L. R. 2 C. P. 311; *Corby* v. *Hill,* 4 C. P. N. S. 556; *Pickard* v. *Smith,* 10 C. P. N. S. 470; *Wood on Nuizances,* sec. 135; *Parveby* v. *Lancaster Canal Co.,* 11 Ad. & E. 228; s. c. in *Cam. Scac.,* 11 Ad. & E. 241.

Among many American cases which may be cited in support of the same principle, we may refer to *Elliott* v. *Pray,* 10 Allen, 378, and *Freer* v. *Cameron,* 4 Rich. (S. C.) 228. Moreover, it is to be noted that these cases establish the principle that when a person injured stands in the relation of "customer" to the owner of the place of business where the acci-

dent happens, the burden of proof is on the latter to show that the injury has happened without fault on his part; in other words, in such a case, the maxim *res ipsa loquitur* applies. In the language of the authorities, the shopkeeper must "take care" of his customers, and, if they are injured, must *show that he has taken such care.* These principles of law are well recognized in Maryland. *B. & O. R. R. Co.* v. *Rose,* 65 Md. 485; *Albert* v. *State, use of Ryan,* 66 Md. 325; *Benson* v. *Baltimore Traction Co.,* 77 Md. 535. Indeed, in this case it may be doubted whether the plaintiff would not have been entitled to recover even if he had been a servant of the defendant at the time of the accident. *Kann* v. *Meyer,* 88 Md. 541.

It will be observed that the defendants did not claim that the plaintiff was disentitled to recover by reason of contributory negligence on the part of the decedent; their prayer and the Court's action in directing the verdict for them was based entirely upon the alleged absence of evidence to show negligence or any violation of legal duty on the part of the defendants. The question whether there was conclusive evidence of contributory negligence is not therefore before this Court. *Triesler* v. *Wilson,* 89 Md. 169.

In regard to the first exception, it will be noted that the Court did *not* hold that the inspection was unnecessary or inexpedient in the case. The Court ruled *distinctly* that it had no power to direct an inspection of the premises by the jury except by consent of parties; in other words, the Court considered Art. 75, sec. 93, Code as authorizing such inspection *only* when this was deemed "necessary or expedient," *not* by the Court, but by *both parties* to the cause. It is unnecessary to consider, therefore, whether the determination of the trial Court as to the necessity or expediency of such inspection would or would not be reviewable on appeal; for, if we grant that this question is one lying within the discretion of the trial Court, yet if that Court *refuses to exercise* that discretion, an appeal clearly lies from such refusal. *Negro Bell* v. *Jones,* 10 Md. 322.

It must be admitted that the language of the statute is not happy, and its amendment may perhaps be desirable; nevertheless, the plaintiff's application seems to have come clearly within its terms, and it would be difficult to find a case where the exercise of the power it conferred would be less objectionable and more plainly calculated to promote the ends of justice.

*Carroll T. Bond* (with whom were *Wm. L. Marbury* and *Geo. Weems Williams* on the brief), for the appellees.

The Court below was correct in granting the defendant's prayer instructing the jury that the plaintiff was not entitled to recover and the verdict should be for the defendants. The burden is upon the plaintiff to show that the accident resulting in her husband's death was due to a want of ordinary care on the part of defendants or their servants, in some one or more particulars. There are no facts brought out in the evidence from which it can reasonably be inferred that the defendants or their servants were guilty of negligence which contributed to the accident.

The facts brought out are simply : that the defendant's servant, Nauman, obeying a pre-arranged signal from Arnold, the deceased, moved the elevator up to the floor to which he had previously carried Arnold, and after the elevator came to that floor, Arnold was found on the top of the cover of the shaft. How he happened to get on this cover is not known. It is not known whether or not the guard-rail in front of the shaft was up or down when he approached it to give his signal. It is not known whether or not he was aware that he was standing on the cover of the shaft, while signaling. There is strong reason for presuming the contrary. He had ridden on the elevator under the same surroundings at odd times for a few years; the elevator always lifted covers at the several floors, with a sharp report each time, and must have made that same sharp report under him when coming up at the time of the accident. He knew there were covers over the shaft lifted by the elevator in its ascent; and may, at least, have heard

the lower one lifted just before the accident.    And even if he
forgot the existence of the cover he knew the elevator shaft
was directly next to the ropes with which he was signaling,
and this must have reminded him that the shaft was covered.
He may have gone upon the cover inadvertently and
thoughtlessly ; may have lifted the rail to do so, or may have
been overcome with some faintness and fallen over the shaft.
Color is lent to this latter suggestion by the fact that he ap-
parently made no outcry when lifted from the floor.    The
plaintiff charges negligence on the part of the defendants or
their servants.    It is upon her to prove this negligence caus-
ing the accident.   *Foy's case,* 47 Md. 82.

It cannot be said there was negligence in bringing the ele-
vator up too suddenly, for there is no evidence to that effect ;
nor that it was brought up without warning, for Mr. Arnold
was trying to bring it up according to a prior arrangement,
and Nauman gave him specific warning.    Nor can it be said
that there was negligence in not stopping the elevator after it
was found that Mr. Arnold was on the trap door, for he was
not found until after the accident.    Cases of this sort are not
unfamiliar, as several appear in the Maryland Reports.    Per-
sons have been found dead on railroad tracks, and no witnesses
have been able to state exactly how the accident causing death
came about.    There were more or less plausible theories
offered in some cases, but in the absence of anything more
definite the Courts have directed verdicts for the defendant,
and the judgments has been affirmed.    *State, use of Barnard*
v. *P. W. & B. R. R. Co.,* 60 Md. 555; *B. & P. R. Co* v. *Abbott,*
75 Md. 152; *N. C. Ry. Co.* v. *Burns,* 54 Md. 113; *Miller* v.
*B. & O. R. R. Co.,* 58 Md. 221; *Rudolph* v. *Montant,* 37 App.
Div. N. Y. 396; *Mau* v. *Morse,* 3 Colo. App. 359.

The ruling denying the plaintiff's motion for an inspection by
the jury of defendants' premises cannot be reviewed, and was
correct.    Sec. 93, Art. 75, Maryland Code, P. G. L., is per-
missive only and the inspection therein authorized is discre-
tionary with the Court.    The section does not contemplate
the invasion of the property or premises of any person for the

purpose of examining a machine or appliance from which a personal injury has resulted, as in this case, and such invasion, while without objection if consented to by both parties, cannot be compelled without such consent. The machine or appliance is not " property, being the subject of the action, cause or proceeding," within the meaning of the section. Upon the facts appearing in the testimony of the witnesses, inspection would have been fruitless and could not have altered the disposition of the case.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages for injuries which resulted in the death of the husband of the plaintiff.

It appears from the testimony that the defendants, Amon Green & Company, are dealers in woolen yarns in the city of Baltimore, and that John Arnold the plaintiff's husband had been in the habit for some years of visiting their establishment at No. 5 West German street for the purpose of purchasing small lots of yarn which he retailed to his customers. The defendants occupied the basement, first and fourth floors of the building. The second and third floors were occupied by other persons with whom the defendants had no business relations. The only means of access from the first to the fourth floor is by the elevator—the stairway having been closed. The elevator, as described by the witnesses is a water-power elevator; and as it goes up to the upper floors, it carries with it the doors or coverings of the hatchways. And as it reaches each floor it lifts the covering or door and takes it up to the top; as the elevator comes down it leaves these doors or portions of the floor at their appropriate places thus closing the aperture through which it moves in ascending and descending. The elevator was used for both freight and passengers. It consisted of an open platform with posts or stanchions at each corner and cross timbers at the top. The cables which supported the weight of the elevator were fastened to these cross timbers and passed through holes in the middle of the platforms or movable doors over the hatchways.

On the day of the accident Arnold called at the defendants' place of business to get a lot of goods with which to fill several small orders he had received, and after some conversation with Mr. Green, one of the defendants, they together with the porter got upon the elevator and went to the fourth floor to inspect the goods which it was supposed would be suitable for Arnold's purposes. There he was left by the defendant and the porter for the purpose of assorting and putting the goods in packages, with the understanding that when he wanted to come down he was to give the signal and the elevator would be sent up for him. In addition to these facts we learn from the testimony of the porter, the only other witness who testified in addition to Green, that he went to the fourth floor a few minutes before twelve o'clock to ascertain if Arnold was ready to go down, and finding that he had not finished, the porter told him that when he wanted to use the elevator he should shake one of the ropes to give the signal below. The witness says that the rope he referred to and which he instructed Arnold to shake, was " the first rope near where he could reach, not the check, but the brake rope." The elevator was in one end of the room and Arnold was working at the other end, a distance of about eighty feet away, so that it is not certain from the testimony whether he clearly apprehended which rope he was to use to give the signal. But this fact does not appear to be material for the signal was in fact given and was distinctly heard down stairs. After the conversation just mentioned the porter got on the elevator and descended to the first floor—and sometime thereafter, exactly how long the testimony does not disclose, but before one o'clock, the signal agreed upon was heard by the porter. He immediately went to the elevator and called up that he was coming. The witness thus describes what then took place: " I went on the elevator, and went up stairs for Mr. Arnold; when I got up there the guard was down and I was looking for him, but he wasn't there; so I went around to where he was working, walked around, but didn't see him ; then I came around the other way, and it just struck my eye

at the same time that the platform over the elevator was a little something out of shape there, so I went back, and climbed over the goods alongside of the elevator and let the elevator come down, and when I looked up I saw the old gentleman in there. So I let the elevator come down quick so that the trap doors would be even with the floor, and lifted him out."

On the fourth floor where the accident happened the opening through which the elevator came was in the corner of the room about four feet from the walls and near the windows. This opening was protected by a railing as high as a man's waist, the front or entrance railing being movable or shifting to allow access to the elevator platform. When the porter went up the second time he found the shifting rail down. The evidence does not disclose who opened it.

Arnold died within a few hours after the accident and this suit was brought by his wife to recover damages sustained by his death.

... The plaintiff produced two witnesses, one of the defendants and one of their employees. At the close of plaintiff's testimony her counsel asked the Court that the jury be sent to inspect the premises of the defendants, and especially the elevator described in the evidence, and the place where the deceased was injured.

But the learned Judge below held that such inspection could be ordered only by consent of parties, and in the absence of the consent of the defendants, the motion was overruled. This ruling forms the first bill of exceptions.

The defendants offered no evidence and at their instance the Court took the case from the jury. This ruling constitutes the second bill of exceptions.

The plaintiff has appealed.

Two questions are thus presented, first, was there error in the refusal of the Court in the absence of the consent of both parties to allow the jury to visit the premises where the accident happened; and, second, is there any evidence in the cause legally sufficient to show negligence on the part of the defendant.

1. By the two Acts of 1886, chapter 317 and 415, Art. 75 of the Code, "Pleadings, Practice and Process," was amended by the addition of two sections. The section enacted by chapter 317 and which is now codified as sec. 93 of the same Article, and relied on by the plaintiff is as follows: "It shall be lawful for the Court in any action at law  *  *  *  * upon application of any party thereto  *  *  *  to make any order for the detention, preservation or inspection of any property being the subject of such action  *  *  *  *; to authorize any person  *  *  *  *. to enter upon or into any land or building in the possession of any party to such action  *  *  *  *; to authorize any samples to be taken or any observations to be made or experiment to be tried which may seem necessary or expedient for the purpose of obtaining full information or evidence." The other section which was enacted by chapter 415 of the Acts of the same year reads thus: "Any party to a cause or action at law or in equity shall be at liberty to apply to *the Court* or a *Judge* thereof for a rule or order for the inspection by the *Court or jury* of any real or personal property, the inspection of which may be material to the proper determination of the question in dispute, and it shall be lawful for the Court or Judge, if they or he think fit, to make such rule or order upon such terms as to costs and otherwise as such Court or Judge may direct."

When the Code now in force was adopted in 1888 the last named Act was entirely omitted, so that the present section 93 of Art. 75, although it purports to be a codification of both of these Acts, it is an exact reproduction only of the first, namely the Act of 1886, ch. 317.

The contention of the plaintiff is that by the proper construction of sec. 93 of Art. 75, it was, at least, within the discretion of the trial Court, whether it would allow the jury to visit the premises, and that having refused to exercise that discretion an appeal lies from such refusal. But we cannot agree to the correctness of this construction of sec. 93. In our view this section gives the trial Court no power, no discretion in the matter of allowing the *jury* to inspect the premises, and

hence the Court below properly overruled the plaintiff's motion. It may be conceded that some of the language used in this section is broad enough to include the jury. Thus the Court may authorize "any person or persons" to enter, &c. But at the very same session when this section was enacted chapter 415 was passed by which, as we have seen, it was provided that any party to an action at law or cause in equity should be at liberty to ask for a rule for the inspection by the *Court or jury* of any real or personal property, &c., &c. If the Legislature intended by chapter 317 (sec. 93) to include the jury, it would have been idle to pass the subsequent Act. It can hardly be supposed that if the Legislature intended by section 93 to inaugurate such a radical departure from the uniform and settled practice it would not, as it did in the subsequent Act, use language which leaves no room for doubt. So far as we know the practice throughout the State has conformed to the view announced by the Court below, and juries have not been allowed to visit and inspect premises except on the application and consent of both parties since the Code of 1888 was adopted.

But if the action of the Court in taking the case from the jury was not free from error yet any inspection by them of the premises would have been entirely fruitless, for if there was no legally sufficient evidence before them of the defendant's negligence there was nothing for them to pass upon.

2. It will be necessary, therefore to examine the evidence in order to ascertain whether the plaintiff has made out her case by evidence legally sufficient for that purpose.

We have already rehearsed the main and material parts of the testimony, and it only remains to state the well settled rules of law which governs in cases like this and apply it to the facts which are conceded to be true by the instruction which the Court granted to the jury. In *Kann* v. *Meyer*, 88 Md. 541, it is said, quoting from *Cooley on Torts*, 718, "If one expressly or by implication invites others to come upon his premises whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them

into danger and to that end he must exercise ordinary care and prudence to render the premises safe for the visit. And this rule obtains and is recognized both in England and this country." It is also true as was said by BOVILL, C. J., in *Chapman* v. *Rothwell*, El. Bl. & El. 168, "that persons inviting others on their premises are answerable for anything in the nature of a trap." But in our opinion this statement of the rule has no application to this case, for there is no evidence whatever that the injury was caused by anything hidden or in the nature of a trap. Indeed it appears from the evidence offered by the plaintiff herself that her husband had been visiting the warehouse of the defendants several times a year during a period of nine or ten years, on the occasion of which visits he had used this identical elevator. It must be assumed, therefore, that he was quite well acquainted not only with the premises themselves but also with the elevator and the method of its operation. *There is an entire absence of any proof that the elevator itself or the machinery by which it was moved was defective or out of repair.* The evidence is clear and strong that there was abundance of light, the windows being close to the elevator, and but for this unfortunate and mysterious accident it might have been supposed that it was impossible for a man with faculties unimpaired to make any mistake as to the exact location of the elevator, for as we have seen there was a railing around the aperture and the cable ran through the centre of the movable platform. While everything else about the case is left in darkness, one fact appears to be clear, namely that the deceased must have been standing on this platform when the elevator ascended, for otherwise it would have been impossible for him to have been carried up on the top of the elevator and injured as he was. There appears, therefore, to be no evidence of negligence on the part of the defendants. And whatever negligence there was must be attributed to the unfortunate man himself. In the case of *Treadwell* v. *Whittier*, 80 Cal. 575, which is cited without being approved *in toto* by this Court in *Wise* v. *Ackerman*, 75 Md. 375, it is said that a plaintiff injured through the fall of an

hydraulic elevator operated by the defendants in which he is being carried as a passenger need only prove that he sustained injury by the *breaking of the machinery* by which he was carried, and *that such machinery was under the control and management of the defendants, in order to make a case raising a presumption of negligence on the part of the defendants * * .*" The burden is then thrown on the defendants to show they were not guilty of negligence. But we have no such state of case before us on this appeal. As we have pointed out the injury was not caused by any defect in the elevator, the manner of running it or the breaking of the machinery. All we can discover by the evidence is that the injury happened, but how it happened we are not informed, and unless we are prepared to adopt the suggestion that the maxim *res ipsa loquitur* is appiclcable to this case or to hold that the mere happening of the accident without any evidence to show it resulted from want of care on the part of the defendants raises a presumption of their negligence the conclusion is inevitable that the case was properly taken from the jury. In 2 *Shearman & Redfield on the Law of Negligence,* sec. 704, in discussing the subject of liability to *business visitors,* it is said that the mere fact that one is injured while on the premises is no evidence of negligence on the part of the proprietor. *Benedick* v. *Potts,* 88 Md. 56. HOLMES, C. J., says in *Pinney* v. *Hall,* 156 Mass. 225, which was an action by a customer to recover damages for injury caused by falling down a stairway: "This is a naked case of a person tumbling downstairs and unless it can be said that *res ipsa loquitur* applies the Judge was right in his ruling. What is meant by *res ipsa loquitur* is, that the jury are warranted in finding from their knowledge as men of the world that such accidents usually do not happen except through the defendant's fault and therefore in inferring that this one happened through the defendant's fault unless otherwise explained. But that depends on the kind of accident. *With regard to this kind* we are of opinion that a jury would not be warranted in laying down such a premise or in drawing such an inference."

*Larkin* v. *O'Neill*, 119 N. Y. 225, was also an action for damages by a customer for injuries caused by falling downstairs. During the course of the opinion delivered by O'BRIEN, J., he says quoting from *Crafter* v. *Metropolitan Railway Co.*, (L. R.) 1 C. P. 300: "The line must be drawn in these cases between suggestions and possible precautions, and evidence of actual negligence, such as ought reasonably and properly to be left to a jury. It is difficult in some cases, to determine where the line is to be drawn, but here I have no hesitation in saying that there was "no evidence which could properly be left to the jury."

Here we have in evidence nothing but the injury to the deceased and that in some unaccountable way he got upon the trap-door and was found on the top of the elevator fatally injured. It cannot be said there was negligence in bringing the elevator up too suddenly, for there is no evidence to that effect, nor that it was brought up without warning, for the signal agreed upon was given by the injured man, and the man in charge of the elevator gave notice that he was coming. Nor can it be said there was negligence in not stopping the elevator, for the injured man made no outcry and he was not discovered until after the accident. Nor can it here, any more than in the case of the *State, use of &c.*, v. *P. W. & B. R. R. Co.*, 60 Md. 555, where it was in evidence that a man was killed on a railroad bridge or in the case of *B. & P. R. Co.* v. *Abbott*, 75 Md. 152, where a man was killed in a tunnel, be said that the defendants were negligent. In neither case, nor in the case at bar, did any one see the accident. It is not pretended here that the elevator in its construction or machinery was out of repair or that its use in the way it was used was dangerous to one who was accustomed to it, as was Mr. Arnold. There is no room here, therefore, for the application of the maxim *res ipsa loquitur*, for the evidence offered by the plaintiff showing the injury, shows at the same time that the defendant is free from blame. For a full and interesting discussion of this maxim and its application see the case of *Benedick* v. *Potts, supra*, opinion by McSHERRY, C. J.                    *Judgment affirmed.*

(Decided June 17th, 1902.)