## MARIA WEIDMAN *v.* CONSOLIDATED GAS ELEC-TRIC LIGHT & POWER COMPANY ET AL.

[No. 27, October Term, 1929.]

*Decided January 6th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*H. Rand Bickel, Jr.,* with whom were *Karl F. Steinmann* and *Arthur G. Logan* on the brief, for the appellants.

*Robert D. Bartlett* and *Edgar Allan Poe, Jr.,* for the appellees.

Parke, J., delivered the opinion of the Court.

The Public Service Building Company, a corporation, is the owner and occupier in part of the large office building on the southeast corner of Lexington and Liberty Streets in the City of Baltimore, and one of its tenants is the Consolidated Gas & Electric Company, which had a store on the first floor. The front of the structure on Lexington Street, which runs east and west, is on the building line, except the entrance, which is an open recess extending back from the front of the building and public sidewalk, with its sides converging to a doorway some distance south of the building line, which is coincident with the south edge of the sidewalk. The show windows occupy the whole first story front of the building and the sides of the entrance way, and the tenant mentioned had its wares there displayed. The floor of the entrance way was of marble and its surface was on the same level with that of the sidewalk, with which it was united at the building line. From the doorway three heavy runners or mats were laid on the marble floor of the entrance way towards, but not upon, the sidewalk on Lexington Street. These runners had a flexible steel frame of interlocking units with their open spaces alternately inlaid with hard rubber about one inch thick, and they were made to lie flat and were kept in place through the manner of their construction and their own weight, which was from seventy-five to eighty pounds apiece. These runners had thus been used for about seven years before January 15th, 1927, by the large number of persons who had occasion to enter or to leave the

building, and there is no evidence whatsoever that they were not suitable, safe, and in common use under the conditions there subsisting, or that they had ever before been the cause of an accident or had become defective or dangerous in any way.

It was under these circumstances that Maria Weidman met with an accident for which she brought an action in tort against the owner and the named tenant of a part of the building. Miss Weidman, who is a trained nurse of middle age, and who has lived in Baltimore since 1898, was walking east on the south side of Lexington Street, between four and five o'clock on the afternoon of January 15th, 1927, when she met pedestrians, and some students, who were doing a snake walk, which caused her to leave the sidewalk and go on the entrance way of the building described. The plaintiff clearly and simply portrayed her unfortunate accident in this sentence: "I was walking along the street, and I had to step inside of the building line on account of the people that were going by, and noticed the mat lying there, and as I took the step, I was thrown to the pavement, my foot caught on the under edge of the mat, which was turned while I was trying to step." Her other testimony adds nothing, except greater clarity. For instance, she stated that the mat was flat when she began her step, during which she struck the under edge with the toe of her foot and tripped. There was no other testimony to show how the accident happened.

When the plaintiff stepped off the public sidewalk into the private way of the owner in order to avoid other pedestrians and so the better to continue her passage along the highway, she was upon private property. She did not leave the sidewalk to enter the building or the better to observe the display of the show windows, but to escape the crowded condition of the public thoroughfare that had transiently interfered with her progress. See *Murray v. McShane,* 52 Md. 217, 227-228. When she was compelled to step out of the public way, she was aware that she had entered upon a private passageway, since she testified that she knew that she was going inside

the building line; and that she had seen the mats or runners. However, the wide entrance of this private passageway was constructed so as to form an unbroken union with the public highway in the same plane, and at a point where pedestrians passing into and from a populous building and to and fro on the highway separated and commingled so as to affect the movement of the numerous travelers on the sidewalk of a large city by the resulting focal congestion. Under these conditions, the owner of the building, which was planned and erected for his gain, must be held to have contemplated as a natural consequence the occasional presence on its passageway of a pedestrian seeking the path of least resistance in an effort to pass or make his way with the travel on the sidewalk. In short, the style of private entrance provided has created, under the given circumstances, a physical situation which may reasonably be held to be an inducement to a traveler, when impeded, to step upon the adjacent private passageway, and walk laterally with the sidewalk. *Sherman and Redfield on Negligence* (6th ed.), sec. 703, p. 1834. The traveler may, therefore, be said to have acted by implied invitation, since his deviation was not merely for his own convenience and pleasure but because he was led to believe that the passageway, by its location, ease of access, appearance, environment, and adaptability, was intended to be used by right and not by permission by pedestrians as auxiliary to their movement on the sidewalk. So, the owner or occupier is bound to anticipate this use of the passageway, and, therefore, must accordingly take reasonable care with reference to such expectancy. *Bohlen's Studies on Law of Torts,* pp. 170-172, 199.

By inducing or inviting the use of passageways built for the beneficial enjoyment of the premises, the owner or occupier raises the implication that nothing is known of particular perils. The liability, therefore, of the owner or occupier in the use of the passageway by a pedestrian, who has been deflected from the public way by other travelers, but who continues in the general course of the highway, depends on the

failure of the owner or occupier to use ordinary care and prudence to keep it in a reasonably safe condition and suitable for such user, in subordination, however, to its primary purpose of a private way. So, because it is a private entrance, the owner or occupier of the premises had the right to lay suitable mats or runners, and their use was not a breach of any obligation, unless the passageway became unsafe for its customary use by reason of the defective condition of a mat which the traveler did not know, but which the owner or occupier had negligently suffered to exist after he had notice, actual or constructive, of the defect long enough before any damage was sustained to have removed or repaired the dangerous condition or given warning of its existence. *Baltimore & Ohio R. Co. v. Rose,* 65 Md. 485, 488, 489; *Kann & Co. v. Meyer,* 88 Md. 541, 549-550; *Isaac Benesch & Sons v. Ferkler,* 153 Md. 680, 683; *Cordish v. Bloom,* 138 Md. 81, 85; *Morris v. Whipple,* 183 Mass. 27; *Washington etc. Turnpike v. Case,* 80 Md. 36, 45, 46; *Shearman & Redfield on Negligence* (6th Ed.), secs. 703, 704; *Holmes v. Drew,* 151 Mass. 578; *Carleton v. Franconia Iron Co.,* 99 Mass. 216; *Beck v. Carter,* 68 N. Y. 283; *Leighton v. Dean,* 117 Me. 40; *Tomle v. Hampton,* 129 Ill. 379; *Zelley v. James Realty Co.,* 185 Wis. 205; *Rachmel v. Clark,* 205 Pa. 314; *Bennett v. Louisville etc. R. Co.,* 102 U. S. 577, 26 L. Ed. 235.

The defendants, however, were not insurers, and the burden of proof was upon the plaintiff to show, in addition to the happening of the accident, some independent circumstances of fault on the part of the owner and tenant, or of either, that were the proximate cause of her injury. *Arnold v. Green,* 95 Md. 217, 230. In this she failed. The surface of the passageway was not defective. There is no testimony that the runner or mat was not fit, safe, and suitable for the purpose and in the place it was used. Nor was there any proof that the runner or mat had become a trap by reason of some concealed condition or defect which was known or should have been known to the defendants in the exercise of

the ordinary care of a reasonably diligent man under the given circumstances. Neither did the testimony disclose that the corporate defendants, through any agent or servant, touched, moved, or changed any part of the mat or runner, which had laid flat and inert for years before the accident, and its position afterwards was not shown to have been any different. The plaintiff alone testified that any part of the mat moved. She stated, at one point in her testimony, that the mat was turned at the edge at the time and in the course of her single footstep, but, at two other points, she weakens the weight of this assertion by testifying that she thought it was turned. However, it is clear that the condition to which the plaintiff ascribed the injury did not exist before, but arose concurrently with, her step. There is no evidence to show what was the cause of the movement described. Nor was there testimony of a failure to inspect or of any defect in the condition of the mat, which had been in daily use for years, without ever exhibiting any tendency to buckle or turn up at the edge. *Stewart & Co. v. Harman,* 108 Md. 446, 453-455.

On the facts proved, alternative conclusions are admissible, but the more reasonable inference is not of legal culpability, but that the defendants were not guilty of negligence, because the injury was attributable either to the sudden development of a latent defect in the mat that the defendants were ignorant of and could not have known or foreseen in the exercise of ordinary care, such as a buckling or slackness resulting from a breaking down of its fabric, or the loosening or separating of some of its interlocking parts; or to the act of some third party among the number traveling back and forth at the scene and time of the mishap. On either of these conclusions, the defendants were not liable, since the first exonerates them because the defendants were not bound, in the exercise of ordinary care, to know or foresee the sudden turning of the edge of the mat, which in the ordinary course of things was not likely to happen (*Washington etc. Turnpike v. Case,* 80 Md. 36, 45, 46); and the second, also, exon-

erates them because they are not liable for the act of a third party. The doctrine of *res ipsa loquitur* does not apply to this record, since the accident complained of was of a nature consistent with the absence of negligence on the part of the defendants. *Heim v. Roberts,* 135 Md. 600, 605; *Balto. & O. R. Co. v. Wilson,* 117 Md. 198, 210-212; *Charles v. United Rwys. Co.,* 101 Md. 183, 186-187; *Strasburger v. Vogel,* 103 Md. 85, 88-90; *Howser v. Cumberland & P. R. Co.,* 80 Md. 146, 151; *Goldman & Freiman Bottling Co. v. Sindell,* 140 Md. 488, 500, 501; *Chesapeake Iron Works v. Hochschild,* 119 Md. 303; *Arnold v. Green,* 95 Md. 217, 230, 231.

The testimony utterly fails to disclose whether the unexpected turning of the edge of the mat was caused by some defect of the mat or by the act of a person. Before the plaintiff could recover it was necessary for her to show, either that the damage was caused by the servants of the defendants negligently moving the mat so as to make her stumble and fall; or that the accident happened through a discoverable defect in the mat, not probably patent to the traveler, and that there was fault in the defendants not discovering the defect and removing or warning the traveler of it. *Bohlen's Studies in Law of Torts,* 60. *Supra.* The testimony failed to show any negligence on the part of either of the defendants in the selection, use, care, maintenance or condition of the runner or mat over which the plaintiff tripped, and the trial court rightly directed a verdict for the defendants. *Supra. Downing v. Jordan,* 234 Mass. 159.

*Judgment affirmed, with costs.*